JERRY H. BARGER, H. WAYNE KENNERLY, AND HARRY G. YOUNG, JR. v. McCOY HILLARD & PARKS, A NORTH CAROLINA GENERAL PARTNERSHIP, DAVID R. McCOY, MICHAEL W. HILLARD, BRENT H. PARKS AND SHEILA LEE

No. 262PA96

(Filed 24 July 1997)

**1. Corporations § 143 (NCI4th)— accounting malpractice— action brought by shareholders—exceptions to general rule adopted—exceptions not satisfied**

The trial court properly granted summary judgment for defendant-accountants on claims for the lost value of plaintiffs' stock where defendants had been employed to provide services to The Furniture House, Inc. (TFH), plaintiffs were the sole shareholders and directors of TFH, and TFH was liquidated in bankruptcy. The general rule is that shareholders cannot pursue individual causes of action against third parties for wrongs or injuries to the corporation that result in the diminution or destruction of the value of their stock; however, two exceptions to the general rule are adopted. A shareholder may maintain an individual action against a third party for an injury that directly affects the shareholder, even if the corporation also has a cause of action arising from the same wrong, if the shareholder can show that the wrongdoer owed him a special duty or that the injury suffered by the shareholder is separate and distinct from

the injury sustained by the other shareholders or the corporation itself. Plaintiffs here have not alleged a peculiar or personal injury, only the diminution or destruction of the value of the shares, precisely the injury suffered by the corporation, and may not proceed under the special duty doctrine because they have alleged no facts from which it may be inferred that defendants owed plaintiffs in their capacities as shareholders a duty that was personal to them and distinct from the duty defendants owed the corporation. All of the allegations indicate that any duty defendants owed plaintiffs was purely derivative of defendants' duty to provide non-negligent services to TFH and therefore the right to sue defendants for losses plaintiffs suffered as shareholders belonged solely to TFH and perished when the corporation was dissolved in bankruptcy.

Am Jur 2d Corporations §§ 2245, 2246, 2249, 2402, 2404.

Liability of independent accountant to investors or shareholders. 35 ALR4th 225.

2. **Corporations § 143 (NCI4th)— sole shareholders as guarantors—action against corporation's accountants—exception to general rule—summary judgment for defendants improperly granted**

Plaintiffs may proceed with their individual lawsuit against defendant-accountants even though they are guarantors of a corporation's debt under the special duty exception to the general rule prohibiting individual lawsuits where defendants had been employed to provide services to The Furniture House, Inc. (TFH), plaintiffs were the sole shareholders and directors of TFH, and TFH was liquidated in bankruptcy. Guarantors of a corporation's debts ordinarily may not pursue individual actions to recover damages for injuries to the corporation; however, individual actions may be prosecuted if the guarantor can show either that the wrongdoer owed him a special duty or that the injury suffered is personal to the guarantor and distinct from the injury suffered by the corporation itself. Plaintiffs' allegations here create a genuine issue of material fact as to whether defendants owed them a special duty that was personal to them as guarantors and separate and distinct from the duty defendants owed the corporation.

Am Jur 2d Corporations §§ 2245, 2246, 2249, 2402, 2404.

Liability of independent accountant to investors or shareholders. 35 ALR4th 225.

**3. Corporations § 143 (NCI4th)— action by shareholders against corporation's accountants—action not allowed as shareholders—allowed as guarantors—not inconsistent**

Court of Appeals holdings in an action by the shareholders of the corporation against accountants employed by the corporation that plaintiffs may proceed in their individual capacities as personal guarantors of the corporation's debt but not in their individual capacities as shareholders were affirmed even though the parties contended that the holdings are internally inconsistent. Although similar rules of law govern the two roles, the rules must be applied to different facts and there simply were no factual allegations here to support a finding that defendant owed a special duty to plaintiffs as shareholders. Although plaintiffs argued that the shareholder is entitled to seek all damages caused by the wrongdoer once a shareholder establishes the special circumstances or special duty that creates the right to maintain a direct action, plaintiffs here have no claims as shareholders and cannot seek damages as shareholders.

Am Jur 2d Corporations §§ 2245, 2246, 2249, 2402, 2404.

Liability of independent accountant to investors or shareholders. 35 ALR4th 225.

**4. Limitations, Repose, and Laches § 26 (NCI4th)— accountant malpractice—negligent misrepresentation to third party—shareholders as guarantors—statute of limitations**

Plaintiffs' negligent misrepresentation claim arising from accounting services rendered to the corporation of which plaintiffs were the sole shareholders was not barred by the statute of limitations where plaintiffs were allowed to proceed only in their capacities as guarantors of the corporation's debt. Plaintiffs alleged facts that, if true, would bring them within the scope of the duty owed by accountants to persons other than their clients under *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200; in the absence of a professional relationship between the parties, this claim cannot fall under the professional malpractice statute of limitations. The applicable statute of limitations is N.C.G.S. § 1-52(5), which prescribes a three-year statute

**BARGER v. McCOY HILLARD & PARKS**

[346 N.C. 650 (1997)]

of limitations, and which does not accrue until the claimant suffers harm because of the misrepresentation and the claimant discovers the misrepresentation. Plaintiffs' forecast of evidence tends to show that they discovered the alleged misrepresentations in 1990 and their claim was filed in 1992.

**Am Jur 2d, Accountants §§ 24, 25, 29.**

**Application of statute of limitations to actions for breach of duty in performing services of public account. 7 ALR5th 852.**

5. **Fraud, Deceit, and Misrepresentation § 5 (NCI4th)— constructive fraud—taking advantage of relationship—benefit—allegations insufficient**

Plaintiffs' claim for constructive fraud was properly dismissed by the trial court in an action against defendant-accountants by the shareholders of a liquidated corporation where plaintiffs alleged only that they were harmed by specific misrepresentations made negligently by defendants but failed to allege that defendants took advantage of the parties' relationship to the hurt of plaintiffs. Furthermore, plaintiffs have not alleged that defendants sought to benefit themselves in any way; the benefit of continuing their relationship with plaintiffs is not a sufficient benefit to establish constructive fraud. The requirement of a benefit to defendants follows logically from the requirement that a defendant harm the plaintiff by taking advantage of their relationship of trust and confidence and the requirement of a benefit to defendants is implicit throughout the cases allowing constructive fraud claims. The Court of Appeals opinion in *Bumgarner v. Tomblin*, 63 N.C. App. 636, did not eliminate the requirement that defendants in a constructive fraud claim take advantage of, and thus benefit from, their relationship of trust and confidence; in the context of the case as a whole, it is clear that the court in *Bumgarner* merely recognized that defendant's failure to make a profit on a specific transaction did not preclude plaintiffs' claim where there were other allegations that defendant took advantage of the parties' relationship of trust.

**Am Jur 2d, Fraud and Deceit § 4.**

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 120 N.C. App. 326, 462 S.E.2d 252 (1995), *rev'd in part on reh'g*, 122 N.C. App. 391, 469 S.E.2d 593

(1996), affirming in part and reversing and remanding in part an order entered 5 May 1994 by Helms (William H.), J., in Superior Court, Rowan County. Heard in the Supreme Court 12 February 1997.

> *Caudle & Spears, P.A., by Jeffrey L. Helms and Thad A. Throneburg, for plaintiff-appellees.*

> *Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Hatcher Kincheloe, L. Kristin King, and Jennifer Ingram Mitchell, for defendant-appellants.*

> *Smith Helms Mulliss & Moore, L.L.P., by James G. Exum, Jr., Alan W. Duncan, and Larissa Erkman, on behalf of the North Carolina Association of Defense Attorneys, amicus curiae.*

> *Robinson, Bradshaw & Hinson, P.A., by Robert W. Fuller, David C. Wright, III, and Julian H. Wright, Jr., on behalf of the North Carolina Association of Certified Public Accountants, amicus curiae.*

WHICHARD, Justice.

Plaintiffs are the sole shareholders and directors of The Furniture House, Inc. (TFH). Defendants are the accountants retained by TFH to perform bookkeeping services. Plaintiffs filed suit alleging that defendants breached several contracts with plaintiffs and made negligent and constructively fraudulent misrepresentations about the financial condition of TFH, with the result that plaintiffs were forced to liquidate TFH in bankruptcy and to pay personally guaranteed corporate debts out of private funds. Plaintiffs sought compensatory and punitive damages.

Plaintiffs' evidence tends to show that TFH was a North Carolina corporation engaged in the catalog and retail sale of furniture and accessories. Plaintiffs, as sole shareholders and directors of TFH, usually carried out corporate action in an informal manner, often at breakfast meetings. In 1987 or 1988, plaintiffs employed defendant accounting firm to provide accounting services and financial advice. Among other things, the parties agreed that the firm would prepare and issue statements showing TFH's financial status.

Plaintiffs allege that defendant McCoy and an independent contractor worked together to create a computer program in late 1987. The purpose of the program was to take data from TFH computers and formulate it into a report from which defendants could produce

**BARGER v. McCOY HILLARD & PARKS**

[346 N.C. 650 (1997)]

financial statements. Defendants subsequently began producing statements based on information from the computer report. According to plaintiffs, defendants misapplied data from the report in one of the financial statements. This resulted in a series of erroneous financial statements that overstated TFH's sales, understated its liabilities, and concealed the fact that TFH was insolvent. The error was not discovered until plaintiffs attempted to sell TFH.

Defendant McCoy met periodically with plaintiffs to explain the financial statements and to advise them on financial matters. In early 1988 plaintiffs were considering an expansion of TFH. At a breakfast meeting with defendant McCoy, plaintiffs asked whether TFH could amortize the debt the expansion would entail. Plaintiffs allegedly informed McCoy that the debt for the expansion would have to be guaranteed by plaintiffs personally. McCoy told plaintiffs that the debt could be amortized if projected sales targets were reached. The error in the financial statements hid the fact that the debt could not be so amortized. TFH then took out loans to expand its operations. Plaintiffs signed personal guarantees to repay the loans in the event of default.

After the expansion TFH's sales actually exceeded defendant McCoy's projected requirements for amortization of the debt. TFH nevertheless experienced a serious cash flow shortage. McCoy advised plaintiffs that the shortage was due to cash being tied up in inventory and accounts receivable and was temporary. The shortage continued, however, and plaintiffs again asked McCoy for an explanation and for advice about whether to take out loans to cover the shortage. McCoy again stated that the cash flow shortage was temporary. Plaintiffs then obtained and personally guaranteed a line of credit to sustain the company during the shortage.

In late 1989 a prospective buyer approached plaintiffs about purchasing TFH. At an informal meeting at plaintiff Barger's home, plaintiffs asked defendant McCoy for an estimate of the value of TFH. McCoy valued plaintiffs' shares at $800,000. Plaintiffs subsequently signed a letter of intent to sell TFH for $504,000 and the assumption of plaintiffs' personal guarantees of the company's debts.

An independent audit of TFH was undertaken on behalf of the potential buyer. The audit revealed the accounting errors and showed that TFH's liabilities greatly exceeded its assets, so that plaintiffs' shares were actually worthless. Consequently, the potential buyer

chose not to pursue the purchase of TFH. In 1990 TFH entered Chapter 7 bankruptcy.

Defendants' evidence indicates that, under a compilation agreement between defendants and TFH beginning in 1987, defendants agreed to issue monthly financial statements based on information supplied by TFH. Defendants stated, however, that they would not audit or review such statements, nor would they express an opinion or other form of assurance on them. Defendants' evidence also tends to show that McCoy did not assist in creating the computer report but merely relied on the data in it. Defendants contend that their financial statements misstated TFH's financial condition solely because of the erroneous data provided by plaintiffs and that the errors could not have been discovered until the independent audit.

Defendant McCoy acknowledges that he did occasionally encounter plaintiffs at the local hotel where they all often ate breakfast and that he discussed business at TFH with plaintiffs on those occasions. He acknowledges having discussions with plaintiffs about whether TFH could afford to expand and about what would cause TFH to experience a cash flow shortage. Defendants contend, however, that they never contracted to provide this information to plaintiffs individually or for plaintiffs' direct benefit. Rather, defendant McCoy understood that plaintiffs were meeting as the board of TFH, and the accounting advice was solely for the benefit of the corporation. Defendant McCoy asserts that he did not know plaintiffs were going to personally guarantee the loans made to TFH.

Plaintiffs filed suit on 31 July 1992. Their complaint included claims for breach of contract (based on the theory that plaintiffs were third-party beneficiaries of several alleged contracts between defendants and TFH), negligent misrepresentation, and constructive fraud. They sought recovery for (1) the loss of the value of their stock in TFH, and (2) their personal obligations to lenders on individually guaranteed debts of TFH. Defendants filed a motion for summary judgment. On 5 May 1994 the trial court entered an order granting defendants' motion for summary judgment and dismissing plaintiffs' claims.

The Court of Appeals in its first opinion affirmed the trial court except as to plaintiffs' claim for constructive fraud, which it remanded. The Court of Appeals held first that plaintiffs could not maintain individual causes of action against defendants for injuries that resulted in the depreciation or destruction of the value of their

stock. It held that plaintiffs' claims for breach of contract were properly dismissed, as plaintiffs were not intended third-party beneficiaries of the alleged contracts between defendants and TFH. It held further that to the extent that plaintiffs sought recovery for the lost value of their stock through their claims of negligent or fraudulent misrepresentations, those claims were actionable only by or on behalf of the corporation itself and could not be brought personally by plaintiffs.

The Court of Appeals next held that plaintiffs could maintain personal causes of action against defendants for personal damages they suffered when they were required to pay the personally guaranteed corporate debt after TFH was dissolved in bankruptcy. The Court of Appeals held that the breach of contract claims were nevertheless properly dismissed, as the alleged contracts were entered into solely for the benefit of the corporation. It held further that the negligent misrepresentation claim was essentially a claim for accounting malpractice, and the trial court's grant of summary judgment on this issue was proper because the statute of limitations had expired. Finally, it held that there was a question of fact as to whether the fiduciary relationship required for a constructive fraudulent misrepresentation claim existed; therefore, summary judgment on that claim was improper.

Upon plaintiffs' petition for rehearing, the same panel revisited the negligent misrepresentation claim. It concluded that it had erred in characterizing that claim as an accounting malpractice claim barred by the three-year statute of limitations. It then reversed summary judgment as to that claim and remanded the case for trial. Two claims therefore remained to be tried after the Court of Appeals' rehearing and remand: constructive fraud and negligent misrepresentation.

We granted defendants' petition for discretionary review on 5 September 1996. For the reasons that follow, we affirm in part and reverse in part the decision of the Court of Appeals. We hold that plaintiffs may proceed, in their individual capacities as personal guarantors of TFH's debt, with their claim for negligent misrepresentation, and we remand the case for trial on that claim only.

I.

The central issue is whether plaintiffs may proceed with this lawsuit, which they brought in their individual capacities as shareholders

of TFH and personal guarantors of TFH's debt, or whether such a suit may be pursued only by the corporation. If plaintiffs are permitted to proceed, then the parties raise additional questions regarding which claims may be pursued and which were properly dismissed. We therefore begin by addressing the question, under what circumstances, if any, may plaintiffs in their individual capacities seek recovery from defendants?

The damages sought by plaintiffs reflect two different roles plaintiffs served with respect to TFH. First, they were the sole shareholders of the corporation. Accordingly, when TFH went bankrupt, they lost the value of their shares. They seek recovery for this loss. Second, plaintiffs were guarantors of the corporation's debts. Thus, TFH's insolvency resulted in plaintiffs becoming personally liable for those debts. They seek to recover the cost of meeting those personal obligations. The rules of law governing plaintiffs' two roles are substantially the same; however, the facts to which we must apply these rules are distinct. We therefore address each of the plaintiffs' two roles in turn.

A.

[1] As shareholders of TFH, plaintiffs seek recovery for the lost value of their stock. The well-established general rule is that shareholders cannot pursue individual causes of action against third parties for wrongs or injuries to the corporation that result in the diminution or destruction of the value of their stock. *Jordan v. Hartness*, 230 N.C. 718, 719, 55 S.E.2d 484, 485 (1949); *see also Howell v. Fisher*, 49 N.C. App. 488, 492, 272 S.E.2d 19, 22 (1980), *disc. rev. denied*, 302 N.C. 218, 277 S.E.2d 69 (1981).

> There are two major, often overlapping, exceptions to the general rule that a shareholder cannot sue for injuries to his corporation: (1) where there is a special duty, such as a contractual duty, between the wrongdoer and the shareholder, and (2) where the shareholder suffered an injury separate and distinct from that suffered by other shareholders.

12B *Fletcher Cyclopedia of the Law of Private Corporations* § 5911, at 484 (perm. ed. 1993); *see also* H.A. Wood, Annotation, *Stockholder's Right to Maintain (Personal) Action Against Third Person as Affected by Corporation's Right of Action for the Same Wrong*, 167 A.L.R. 279 (1947) [hereinafter Annotation]. We adopt these exceptions to the general rule and hold that a shareholder may maintain an

**BARGER v. McCOY HILLARD & PARKS**

[346 N.C. 650 (1997)]

individual action against a third party for an injury that directly affects the shareholder, even if the corporation also has a cause of action arising from the same wrong, if the shareholder can show that the wrongdoer owed him a special duty or that the injury suffered by the shareholder is separate and distinct from the injury sustained by the other shareholders or the corporation itself. *Accord Howell*, 49 N.C. App. at 492, 272 S.E.2d at 23 ("When the injuries complained of are 'peculiar or personal' to the shareholders, the corporation is not a necessary party to the suit.").

Plaintiffs may not proceed with their lawsuit under the second exception to the general rule because they have not alleged a "peculiar or personal" injury to themselves as shareholders. An injury is peculiar or personal to the shareholder if "a legal basis exists to support plaintiffs' allegations of an individual loss, separate and distinct from any damage suffered by the corporation." *Id.* The only injury plaintiffs as shareholders allege is the diminution or destruction of the value of their shares as the result of defendants' negligent or fraudulent misrepresentations of TFH's financial status. This is precisely the injury suffered by the corporation itself.

To proceed with their lawsuit under the first exception to the general rule, plaintiffs must allege facts from which it may be inferred that defendants owed plaintiffs a special duty. The special duty may arise from contract or otherwise. *See* Annotation, 167 A.L.R. at 285-87. To support the right to an individual lawsuit, the duty must be one that the alleged wrongdoer owed directly to the shareholder as an individual. *Id.* The existence of a special duty thus would be established by facts showing that defendants owed a duty to plaintiffs that was personal to plaintiffs as shareholders and was separate and distinct from the duty defendants owed the corporation. A special duty therefore has been found when the wrongful actions of a party induced an individual to become a shareholder, *see Howell*, 49 N.C. App. at 498, 272 S.E.2d at 26; when a party violated its fiduciary duty to the shareholder, *FTD Corp. v. Banker's Trust Co.*, 954 F. Supp. 106, 109 (S.D.N.Y. 1997); when the party performed individualized services directly for the shareholder, *Herbert H. Post & Co. v. Sidney Bitterman, Inc.*, 219 A.D.2d 214, 225, 639 N.Y.S.2d 329, 337 (1996); and when a party undertook to advise shareholders independently of the corporation, *Bankruptcy Estate of Rochester v. Campbell*, 910 S.W.2d 647, 652 (Tex. Ct. App. 1995). This list is illustrative; it is not an exclusive list of all factual situations in which a special duty may be found.

BARGER v. McCOY HILLARD & PARKS

[346 N.C. 650 (1997)]

We hold that plaintiffs may not proceed with their lawsuit as individual shareholders under the "special duty" exception to the general rule. Plaintiffs have alleged no facts from which it may be inferred that defendants owed plaintiffs in their capacities as shareholders a duty that was personal to them and distinct from the duty defendants owed the corporation. Plaintiffs have not alleged that defendants induced them to become shareholders in TFH; indeed, the parties agree that plaintiffs were the sole shareholders of TFH before the corporation entered into a professional relationship with defendants. Plaintiffs have not alleged that defendants undertook to advise them individually *as shareholders*, nor have they made any allegations of a special relationship giving rise to a fiduciary duty by defendants to protect the value of their shares. All of the allegations indicate that any duty defendants owed plaintiffs was purely derivative of defendants' duty to provide non-negligent services to TFH. Therefore, the right to sue defendants for losses plaintiffs suffered as shareholders belonged solely to TFH and perished when the corporation was dissolved in bankruptcy.

We affirm the Court of Appeals' holding that plaintiffs' claims to recover damages for the lost value of their stock are actionable only by the corporation itself and that the trial court therefore properly granted summary judgment in favor of defendants on those claims.

B.

[2] We turn now to the question whether plaintiffs may proceed with their lawsuit in their individual capacities as personal guarantors of TFH's debt. The Court of Appeals correctly noted that this is a question of first impression in North Carolina. Other jurisdictions faced with this question have adopted rules of law that parallel the rules for shareholders' individual actions. The majority rule was well stated by the United States Court of Appeals for the Eighth Circuit as follows:

> Shareholders, creditors or guarantors of corporations generally may not bring individual actions to recover what they consider their share of the damages suffered by the corporation. . . . Recovery is available, naturally, when the defendant owes an individual shareholder, creditor, or guarantor a special duty, or when the individual suffered an injury separate and distinct from that suffered by other shareholders, creditors, or guarantors.

*Taha v. Engstrand*, 987 F.2d 505, 507 (8th Cir. 1993) (citations omitted); *accord Buschmann v. Professional Men's Ass'n*, 405 F.2d

659, 662 (7th Cir. 1969); *Chrysler Credit Corp. v. B.J.M., Jr., Inc.*, 834 F. Supp. 813, 838-39 (E.D. Pa. 1993); *Hengel, Inc. v. Hot 'N Now, Inc.*, 825 F. Supp. 1311, 1318 (N.D. Ill. 1993); *Sacks v. American Fletcher Nat'l Bank & Trust Co.*, 258 Ind. 189, 194-95, 279 N.E.2d 807, 811-12 (1972); *Walstad v. Norwest Bank of Great Falls*, 240 Mont. 322, 327, 783 P.2d 1325, 1328 (1989); *Wells Fargo Ag Credit Corp. v. Batterman*, 229 Neb. 15, 20, 424 N.W.2d 870, 874 (1988); *Hershman's, Inc. v. Sachs-Dolmar Div.*, 89 Ohio App. 3d 74, 623 N.E.2d 617, 619 (1993).

We adopt the majority position and hold that guarantors of a corporation's debts ordinarily may not pursue individual actions to recover damages for injuries to the corporation. Individual actions may be prosecuted, however, if the guarantor can show either (1) that the wrongdoer owed him a special duty, or (2) that the injury suffered by the guarantor is personal to him and distinct from the injury sustained by the corporation itself.

The Court of Appeals held first that plaintiffs as guarantors had suffered no injury separate and distinct from that suffered by the corporation. We agree and see no need to elaborate on that court's reasoning. It then held that there were genuine issues of material fact as to whether the parties "had a relationship of trust which defendants breached to the detriment of plaintiffs." *Barger v. McCoy Hillard & Parks*, 120 N.C. App. 326, 335, 462 S.E.2d 252, 259 (1995) (*Barger I*). The Court of Appeals thus determined, implicitly under the special duty exception, that plaintiffs in their capacities as guarantors could proceed with their individual lawsuit.

We apply the same rules for establishing a special duty when plaintiffs are guarantors as we apply when plaintiffs are shareholders. We therefore hold that the existence of a special duty may be established by facts showing that defendants owed a duty to plaintiffs that was personal to plaintiffs as guarantors and was separate and distinct from the duty defendants owed the corporation.

Plaintiffs have alleged the following facts that are relevant to our determination of this issue: (1) that when they sought defendant McCoy's advice about whether to incur the debt necessary to expand TFH, they specifically informed him that the debt would be guaranteed by them personally; and (2) that McCoy's representations about TFH's financial status induced them to personally guarantee several loans subsequently obtained by TFH. Defendant McCoy acknowledges having had conversations with plaintiffs about their desire to

expand TFH but denies that he was aware that they planned to personally guarantee TFH's debt.

The trial court disposed of this case upon defendants' motion for summary judgment. The burden is therefore upon defendants to establish that there is no genuine issue of material fact and that defendants are entitled to judgment as a matter of law. N.C.G.S. § 1A-1, Rule 56(c) (1990); *Oestreicher v. American Nat'l Stores, Inc.*, 290 N.C. 118, 131, 225 S.E.2d 797, 806 (1976). Further, we must view the pleadings and the evidence in the record in the light most favorable to plaintiffs and draw all reasonable inferences in favor of plaintiffs. *Whitley v. Cubberly*, 24 N.C. App. 204, 206-07, 210 S.E.2d 289, 291 (1974); *see also Yount v. Lowe*, 288 N.C. 90, 94, 215 S.E.2d 563, 565 (1975).

We conclude that plaintiffs' allegations create a genuine issue of material fact as to whether defendants owed them a special duty that was personal to them as guarantors and separate and distinct from the duty defendants owed the corporation. First, we attach particular significance to plaintiffs' allegation that defendant McCoy's representations induced them to become personal guarantors of the corporation's debt. As we noted in the previous section, a special duty has been found when the alleged wrongful actions of a defendant induced a plaintiff to become a shareholder in a corporation. We see no reason not to reach a similar result in the analogous situation of a corporation's guarantor.

Second, our case law regarding accountant liability leads inexorably to the conclusion that, taken in the light most favorable to plaintiffs, defendant McCoy, by his representations to plaintiffs, undertook a duty owed separately to plaintiffs. We held in *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 367 S.E.2d 609 (1988), that an accountant's liability for negligent misrepresentation "should extend not only to those with whom the accountant is in privity or near privity, but also to those persons, or classes of persons, whom he knows and intends will rely on his opinion, or whom he knows his client intends will so rely." *Id.* at 214, 367 S.E.2d at 617. Thus, if plaintiffs are able to prove at trial their allegations that defendant McCoy knew and intended that plaintiffs would rely on his opinions when they decided whether to personally guarantee TFH's debt, they will establish that defendants owed them a duty of care that was personal to them and distinct from the duty defendants owed the corporation.

**BARGER v. McCOY HILLARD & PARKS**

[346 N.C. 650 (1997)]

We therefore hold that plaintiffs, in their capacities as guarantors of the corporation's debt, may proceed with their individual lawsuit against defendants under the "special duty" exception to the general rule prohibiting individual lawsuits.

## C.

[3] We have affirmed the holding of the Court of Appeals that plaintiffs may proceed with their lawsuit in their individual capacities as personal guarantors of the corporation's debt and may accordingly pursue all claims and damages associated with those personal guarantees. We have also affirmed the Court of Appeals' holding that plaintiffs may not proceed with their lawsuit in their individual capacities as shareholders; thus, they may not pursue claims and damages associated with the lost value of their stock. We now acknowledge arguments in both parties' briefs that criticize the Court of Appeals' result as "internally inconsistent."

Defendants note that the same rules of law govern individual claims by shareholders and individual claims by guarantors. They argue that the same result must therefore be reached when the rules are applied to defendants' relationship with plaintiffs in both of their roles; that is, if we conclude that defendants owed no special duty to plaintiffs as shareholders, we must also conclude that defendants owed no special duty to plaintiffs as guarantors. Plaintiffs agree with defendants that we must reach the same result with respect to each of plaintiffs' roles, but wish us to conclude that special duties were owed in both instances.

We do not agree with the parties' reasoning. We believe the plaintiffs' roles as shareholders and as guarantors can be treated separately. Although similar rules of law govern the two roles, the rules must be applied to different facts. Here, there simply were no factual allegations to support a finding that defendants owed a special duty to plaintiffs as shareholders. In contrast, the allegations that defendants' representations actually induced plaintiffs to become personal guarantors of the corporation's debt, when viewed in light of our law of accountant liability as set forth in *Raritan*, support a finding of a special duty owed by defendants to plaintiffs as guarantors. We see no reason why plaintiffs' right to pursue individual actions as guarantors of the corporation's debt should be prejudiced by the fact that plaintiffs also happened to be shareholders without a right to an individual claim. Therefore, we disagree with defendants' contention that plaintiffs' claims as guarantors should be disallowed in the interest of theoretical consistency.

Plaintiffs argue that once a *shareholder* establishes the special circumstances or special duty that creates the right to maintain a direct action, the shareholder is entitled to seek *all* damages caused by the wrongdoer: damages that are personal and peculiar to him *and* damages sustained as a shareholder. Plaintiffs cite several cases from other jurisdictions in support of this proposition. Plaintiffs' argument is misplaced. As our analysis above indicates, plaintiffs cannot pursue actions *as shareholders* because they cannot show either injuries that are peculiar and personal to them or a special duty owing to them as shareholders. Because they have no claims as shareholders, they cannot seek damages as shareholders; the authority they cite is therefore inapposite.

## II.

Having concluded that plaintiffs may proceed with a lawsuit in their individual capacities as personal guarantors of TFH's debt, we must decide which, if any, of plaintiffs' claims may proceed to trial. The trial court granted summary judgment for defendants on plaintiffs' breach of contract, negligent misrepresentation, and constructive fraud claims. The Court of Appeals affirmed the trial court's judgment with respect to the breach of contract claims but reversed the trial court as to the negligent misrepresentation and constructive fraud claims. Plaintiffs have not sought review of the affirmation of the trial court's judgment in favor of defendants on the contract claims.

We affirm the Court of Appeals' holding that plaintiffs may proceed with their negligent misrepresentation claim, and we remand that claim for trial. We reverse the Court of Appeals' holding regarding the constructive fraud claim and reinstate the trial court's judgment for defendants on that claim.

## A.

[4] Defendants contend that the Court of Appeals erred in allowing plaintiffs' claim for negligent misrepresentation to go forward because the claim was barred by the three-year statute of limitations in N.C.G.S. § 1-15(c) for professional malpractice claims. Plaintiffs argue that the claim was one for negligent misrepresentation rather than professional malpractice and was thus subject to the statute of limitations in N.C.G.S. § 1-52(5). Plaintiffs argue further that a cause of action for negligent misrepresentation does not accrue until the aggrieved party discovers the misrepresentation.

**BARGER v. McCOY HILLARD & PARKS**

[346 N.C. 650 (1997)]

In *Raritan River Steel Co.*, we held that an accountant need not be in privity of contract with a party to be liable to him for negligent misrepresentation. We expressly extended an accountant's liability to "those persons, or classes of persons, whom [the accountant] knows and intends will rely on his opinion, or whom he knows his client intends will so rely." *Raritan*, 322 N.C. at 214, 367 S.E.2d at 617. We did not expressly address whether such a negligent misrepresentation claim would be tantamount to a professional malpractice claim for purposes of determining the appropriate statute of limitations.

N.C.G.S. § 1-15(c) provides, in pertinent part:

> Except where otherwise provided by statute, a cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action . . . .

By its plain terms, this statute applies to the rendering of "professional services." The term "professional services" refers to "those services where a professional relationship exists between plaintiff and defendant—such as a physician-patient or attorney-client relationship." *Doe v. American Nat'l Red Cross*, 798 F. Supp. 301, 306 (E.D.N.C. 1992) (footnote omitted); *cf. Easter v. Lexington Mem. Hosp., Inc.*, 303 N.C. 303, 305-06, 278 S.E.2d 253, 255 (1981) (requiring medical malpractice litigants to show the existence of a physician-patient relationship); *Chicago Title Ins. Co. v. Holt*, 36 N.C. App. 284, 288, 244 S.E.2d 177, 180 (1978) (holding that claims of attorney malpractice may be brought only by those who are in privity of contract with the attorney).

As our analysis in the previous section indicates, there was no professional relationship between the parties in this case. Indeed, plaintiffs have been permitted to proceed with their lawsuit in the acknowledged absence of a professional relationship only because they have alleged facts that, if true, would bring them within the scope of the duty owed by accountants to persons *other than their clients* under the rule in *Raritan River Steel*. In the absence of a professional relationship between the parties, this claim cannot fall under the professional malpractice statute of limitations.

Plaintiffs contend, and defendants do not dispute, that they have properly pleaded their claim for negligent misrepresentation. The applicable statute of limitations is therefore N.C.G.S. § 1-52(5). That

section also prescribes a three-year statute of limitations. However, we have held that a claim for negligent misrepresentation "does not accrue until two events occur: first, the claimant suffers harm because of the misrepresentation, and second, the claimant discovers the misrepresentation." *Jefferson-Pilot Life Ins. Co. v. Spencer*, 336 N.C. 49, 57, 442 S.E.2d 316, 320 (1994). Plaintiffs' forecast of evidence tends to show that they discovered the alleged misrepresentations in 1990. At that time, they became subject to the three-year statute of limitations for "any other injury to the person or rights of another, not arising on contract and not hereafter enumerated," set forth in N.C.G.S. § 1-52(5). Their claim was filed in 1992. We therefore hold that plaintiffs' negligent misrepresentation claim was not barred by the statute of limitations, and we remand the claim for trial.

## B.

**[5]** We must next decide whether plaintiffs may proceed with their claim for constructive fraudulent misrepresentation. The Court of Appeals held that "[t]he record, when taken in the light most favorable to plaintiffs, suggests [that] their claim for constructive fraudulent misrepresentation is a constructive fraud claim based upon a breach of fiduciary duty." *Barger I*, 120 N.C. App. at 336, 462 S.E.2d at 259. We reverse.

In order to maintain a claim for constructive fraud, plaintiffs must show that they and defendants were in a "relation of trust and confidence . . . [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff." *Rhodes v. Jones*, 232 N.C. 547, 549, 61 S.E.2d 725, 726 (1950). Constructive fraud differs from actual fraud in that "it is based on a confidential relationship rather than a specific misrepresentation." *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678-79 (1981). Implicit in the requirement that a defendant "[take] advantage of his position of trust to the hurt of plaintiff" is the notion that the defendant must seek his own advantage in the transaction; that is, the defendant must seek to benefit himself.

The parties dispute whether plaintiffs' forecast of evidence tends to show that there was a relationship of trust and confidence between defendants and plaintiffs sufficient to support a claim for constructive fraud. We need not decide this issue, however, because we conclude that plaintiffs have failed to allege that defendants *took advantage* of the parties' relationship to the hurt of plaintiffs. Rather,

BARGER v. McCOY HILLARD & PARKS

[346 N.C. 650 (1997)]

plaintiffs have alleged only that they were harmed by specific misrepresentations made negligently by defendants. Further, plaintiffs have not alleged that defendants sought to benefit themselves in any way. Plaintiffs contend that their forecast of evidence shows that defendants did benefit from their alleged misrepresentations regarding TFH's financial status because they obtained the benefit of their continued relationship with plaintiffs. This is insufficient to establish the benefit required for a claim of constructive fraud, however. Presumably, defendants would have obtained the benefit of a continued relationship with plaintiffs equally by providing accurate information about TFH's financial health. Moreover, plaintiffs have alleged no facts tending to show that defendants gained anything by negligently misrepresenting the corporation's true financial condition.

Plaintiffs argue that they need not allege a benefit to defendants to maintain their constructive fraud claim. We disagree. The requirement of a benefit to defendants follows logically from the requirement that a defendant harm a plaintiff by taking advantage of their relationship of trust and confidence. Moreover, the requirement of a benefit to defendants is implicit throughout the cases allowing constructive fraud claims. *See, e.g., Terry*, 302 N.C. at 84, 273 S.E.2d at 678 (defendant used position of trust and confidence to take advantage of his ill brother and purchase his business at a price below market value); *Link v. Link*, 278 N.C. 181, 193, 179 S.E.2d 697, 704 (1971) (defendant husband took advantage of relationship with wife to obtain shares of stock as part of a separation agreement); *Vail v. Vail*, 233 N.C. 109, 115, 63 S.E.2d 202, 207 (1951) (defendant son took advantage of relationship of trust to obtain deed to property from his mother).

Plaintiffs argue further that any requirement of a benefit to defendants was discarded by the Court of Appeals in *Bumgarner v. Tomblin*, 63 N.C. App. 636, 306 S.E.2d 178 (1983). Plaintiffs rely on the statement there that "[t]he facts that defendant did not benefit from the deals on the land and that he no longer has an interest in the land are no barrier to a constructive fraud claim." *Id.* at 641, 306 S.E.2d at 183. Plaintiffs misapprehend the import of this statement. In *Bumgarner* the parties agreed to purchase land and sell it for profit. The plaintiffs later accused the defendant of taking advantage of them by selling property without their knowledge and using the proceeds for his own purposes. In concluding that the plaintiffs had forecast sufficient evidence to survive a motion for summary judgment on their constructive fraud claim, the Court of Appeals described one

specific transaction in which the defendant promised to finance a parcel of land until the parties could turn a profit on its sale and then allegedly turned away prospective buyers. The property eventually was subjected to foreclosure, and both parties suffered a loss of profits. It was in this context that the Court of Appeals made the statement quoted above. In the context of the case as a whole, it is clear that the court's statement there merely recognized that the defendant's failure to make a profit on a specific transaction did not preclude the plaintiffs' claim, when there were other allegations that defendant took advantage of the parties' relationship of trust and used proceeds from land sales to his own ends. Any other meaning would be in conflict with our long-standing case law on constructive fraud. We therefore conclude that the Court of Appeals' opinion in *Bumgarner* did not eliminate the requirement that defendants in a constructive fraud claim take advantage of, and thus benefit from, their relationship of trust and confidence with plaintiffs.

Plaintiffs' claim for constructive fraud was properly dismissed by the trial court. We reverse the holding of the Court of Appeals to the contrary.

### III.

We hold that plaintiffs may not proceed in their individual capacities as shareholders of TFH with their suit to recover for the lost value of their stock; however, plaintiffs may proceed in their individual capacities as personal guarantors of TFH's loans with their suit to recover damages suffered when they became personally liable for the loans. We affirm the holding of the Court of Appeals that plaintiffs have stated a claim for negligent misrepresentation. We reverse the Court of Appeals' holding that plaintiffs have stated a claim for constructive fraudulent misrepresentation and accordingly reinstate the trial court's judgment in favor of defendants on that claim.

The cause is remanded to the Court of Appeals for further remand to the Superior Court, Rowan County, for trial of plaintiffs' negligent misrepresentation claim.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.