Griffin Mgmt. Corp. v. Carolina Power & Light Co., 2009 NCBC 27.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
05 CVS 14428

GRIFFIN MANAGEMENT CORP.;     )
BRUCE MAGERS, TRUSTEE IN       )
BANKRUPTCY FOR GRIFFIN         )
SERVICES, INC.; AND C. EDWIN   )
ALLMAN, III, TRUSTEE IN        )
BANKRUPTCY FOR JOHN GRIFFIN,  )
INDIVIDUALLY,                  )
    Plaintiffs        )  **ORDER ON MOTION FOR SUMMARY**
                               )  **JUDGMENT ON THE CLAIMS OF**
   v.            )  **PLAINTIFFS GRIFFIN SERVICES, INC.**
                               )  **AND JOHN GRIFFIN, INDIVIDUALLY**
CAROLINA POWER AND LIGHT CO.,  )
INC.; PROGRESS ENERGY, INC.;   )
DUKE ENERGY CORP. and DUKE     )
POWER CO., LLC d/b/a DUKE       )
ENERGY CAROLINAS, LLC;         )
SUPERTEL NETWORKS, INC. and    )
ENGINEERING AND TECHNICAL      )
SERVICES, INC.,                )
    Defendants       )

THIS CAUSE, designated an exceptional and complex business case by Order

of the Chief Justice of the North Carolina Supreme Court, pursuant to Rules 2.1 and 2.2

of the General Rules of Practice, and assigned to the undersigned Special Superior

Court Judge for Complex Business Cases, was before the court on September 18,

2008, for determination of the Motion for Summary Judgment by Defendants Carolina

Power and Light ("CP&L") and Progress Energy, Inc. ("Progress") (collectively, the

"Defendants")[1] on the Claims of Plaintiffs Griffin Services, Inc. ("GSI") and John Griffin,

---

[1] Though this motion was made by both CP&L and Progress, the court has since granted Progress'
Motion for Summary Judgment. Order and Opinion on Motion for Summary Judgment by Plaintiff
Progress Energy, Inc., Nov. 12, 2009. As such, the court generally refers only to CP&L in this opinion.

Individually, ("Griffin") (the "Motion") and was made pursuant to the provisions of Rule 56, North Carolina Rules of Civil Procedure ("Rule(s)") and BCR 15; and

THE COURT, having considered the Defendants' Motion, the arguments and briefs in support of and in opposition to the Motion, and appropriate matters of record, CONCLUDES that the Motion for Summary Judgment on Claims of Griffin Services, Inc. and John Griffin, Individually, should be GRANTED for the reasons stated herein.

I.

PROCEDURAL BACKGROUND

[1] Plaintiffs filed their first Complaint on November 20, 2003. *Griffin Mgmt. Corp. et al. v. Carolina Power & Light Co., et al.*, 03 CVS 7367 (Forsyth County). Plaintiffs dismissed this action on October 28, 2004.

[2] On October 18, 2005, Plaintiffs re-filed their action. *Griffin Mgmt. Corp. et al. v. Carolina Power & Light Co. et al.*, 05 CVS 14428 (Wake County). Plaintiffs alleged new and additional claims in their re-filed Complaint. Specifically, the Plaintiffs added new causes of action for tortious interference with contract, unjust enrichment/*quantum meruit* and special damages for GSI. These claims were not alleged in the first Complaint.

[3] CP&L and Progress collectively filed an Answer and Counterclaim on January 13, 2006, as well as a Motion to Dismiss the claims against Progress pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[2]

[4] On April 11, 2008, Defendants filed this Motion. The Motion, ripe for adjudication, was heard and decided by the court on September 18, 2008.

---

[2] The Motion to Dismiss was filed prior to this matter being assigned to the Business Court, and never became ripe for adjudication. The court deems this Motion to Dismiss to be abandoned and therefore now rules only on the Motion for Summary Judgment.

II.

MOTIONS FOR SUMMARY JUDGMENT

[5]     Under Rule 56(c), summary judgment is to be rendered "forthwith" if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.  When the forecast of evidence demonstrates that the plaintiff cannot satisfy an essential element of a claim or overcome an affirmative defense established by the defendant, summary judgment for the defendant should be granted.  *Grayson v. High Point Dev. Ltd. P'ship*, 175 N.C. App. 786, 788 (2006).

[6]     Unless otherwise indicated herein, the material facts reflected in paragraphs 7 through 9 of this Order exist, are undisputed[3] and are pertinent to the issues raised by the Motions.

III.

FACTS

[7]     Plaintiff Griffin Management Corporation ("GMC") is a company formerly engaged in the business of providing meter reading and related services to utility companies, including CP&L.  GMC and CP&L entered into a Meter Reading Services Contract on March 8, 1994.[4]  Neither GSI nor Griffin were parties to this contract.[5]  Indeed, GSI has never performed any work for CP&L.[6]

---

[3] It is not proper for a trial court to make findings of fact in determining a motion for summary judgment under Rule 56.  However, it is appropriate for a Rule 56 order to reflect material facts that the court concludes exist and are not disputed, and which support the legal conclusions with regard to summary judgment.  *Hyde Ins. Agency v. Dixie Leasing*, 26 N.C. App. 138 (1975).
[4] Blanchard Dep. Ex. 1.  *See also* Defs.' Ans., ¶ 40.
[5] Blanchard Dep. Ex. 1.

[8]     GMC was initially created in the early 1990s as a subsidiary of GSI to perform "outsourcing" work.[7]  During the start-up phase of GMC, GSI provided financial support and information technology, human resources and employee training services to GMC.[8]  The companies later disassociated because "[i]t was decided that [GMC] was strong enough to stand on its own."[9]  A line of credit with Lighthouse Financial Corporation ("Lighthouse") the two companies initially shared[10] was renegotiated such that the companies had separate credit lines with separate limits.[11]  As a client, GMC was charged for the services GSI rendered.[12]  GMC did not, however, pay GSI for its services.[13]

[9]     When GMC was formed, Griffin became the majority shareholder and assumed responsibility for GMC's operations.[14]  However, Griffin has testified that he was not an employee of GMC.[15]  Griffin's wife, Betty Griffin, neither participated in the

---

[6] B. Griffin Dep. 58:19-22 (Deponent testifies she is not able to recall whether CP&L was ever a client of GSI); *see* 3 J. Griffin Dep. 20:10-20 (testifying that there was never a contract between GSI and CP&L).
[7] B. Griffin Dep. 17:7-9, 28:22-29:11, 101:7-23.
[8] *Id.* at 36:16-37:6.
[9] *Id.* at 40:12-17.  Before the split, there were no individuals employed by both GMC and GSI.  *Id.* at 39: 9-17.  At some point, the companies began to lease space separately, *id.* at 37: 7-16, 38:17-22, and they observed their own corporate formalities, 2 J. Griffin Dep. 52:12-23.  After the split, the companies continued to share the same health plan,  3 J. Griffin Dep. 109:21-110:2, as well as the use and costs of a communications system, computers and computer software, 3 J. Griffin Dep. 110:19-111:14.
[10] Miller Dep. 39:10-22.
[11] B. Griffin Dep. 48:7-10; Miller Dep. 58:5-20, 63:16-64:22.  However, these lines of credit required cross-collateralization of the two accounts.  3 J. Griffin Dep. 113: 4-17.  *See also* B. Griffin Dep. 56:3-8.
[12] B. Griffin Dep. 57:19-21.
[13] 3 J. Griffin Dep. 17:2-18:1 (noting three payments as exceptions), 114:18-116:4 (explaining that GSI had charged GMC a monthly fee between $37,500 and $45,000 for its work since 1998, but most of those invoices were not paid by GMC because it could not afford to do so).  Griffin also testified that GSI made loans to GMC over the years.  *Id.* at 116:5-118:16.
[14] B. Griffin Dep. 15:19-22, 30:9-11.
[15] Instead, Griffin stated he was an employee of GSI.  2 J. Griffin Dep. 113: 1-25; 3 J. Griffin 60: 20-25.  However, Griffin did serve as CEO of GMC, 2 J. Griffin Dep. 99:21, in fall of 2000 and otherwise "worked for" GMC.  *Id.* at 113:18 -114:1.

operations of GMC nor owned any stock in GMC.[16]  Griffin personally guaranteed several of the debts of GMC, including an advance made by CP&L.[17]

IV.

THE PARTIES' CONTENTIONS

[10]    CP&L argues that it is entitled to summary judgment on all claims made against it by Plaintiffs GSI and Griffin pursuant to Rule 56(c) on the grounds that there are no genuine issues of material fact and they are entitled to judgment as a matter of law.

[11]    CP&L contends that GSI and Griffin lack standing to assert the claims against it for the following reasons:

a.    CP&L did not have a contract or other business relationship with Griffin or GSI.  The relationship that forms the basis of this litigation was GMC's meter-reading contract with CP&L;

b.    Griffin, as the majority shareholder of GMC, cannot sue for damages in his individual capacity;

c.    There was no joint venture between GMC and GSI that would create a cause of action on GSI's behalf against CP&L; and

d.    GSI and Griffin were merely creditors of GMC and lack a legal basis to pursue litigation on behalf of GMC.

[12]    GSI claims to have standing because:

a.    GSI was not a shareholder of GMC;

b.    GSI's claims are rooted in tort theory instead of contract; and

---

[16] B. Griffin Dep. 17:13-16, 29:21-25, 30:5-8.

[17] *See* Dep. Ex. 12, Fountain Aff. at ¶ 3; Oliver Dep. Ex. 26.  *See also* 2 J. Griffin Dep. 23:14-22; 3 J. Griffin Dep. 119:1-120:9.

        c.     GSI and GMC were joint venturers.

[13]    According to Griffin, he has standing and summary judgment is inappropriate because:

        a.     Griffin was not merely a shareholder of GMC, as CP&L had forced him into a personal contractual relationship in which CP&L (i) made Griffin sign a guarantee; (ii) made Griffin a primary obligor; (iii) created a special duty to Griffin; (iv) disregarded GMC corporate formalities and (v) secreted its plan to gut GMC, plunder its assets and leave Griffin with the remaining debt; and

        b.     Griffin's damages are different from that of GMC in that while GMC's damages are the value of the workforce and other assets, Griffin holds personal losses himself as a guarantor, damages not claimed by GMC.

[14]    CP&L contends that pursuant to such arguments, the claims of GSI and Griffin against it should be denied.

V.

<u>RELEVANT LAW</u>

[15]    In order for a joint venture to exist in North Carolina, there must be "(1) an agreement, express or implied, to carry out a single business venture with joint sharing of profits, and (2) an equal right of control of the means employed to carry out the venture." *Rhoney v. Fele*, 134 N.C App. 614, 620 (1999).

[16]    The parties must share profits of the venture directly – not simply agreeing to a sum certain to be exchanged for services rendered. *Southeastern Shelter Corp. v. BTU, Inc.* 154 N.C. App. 321, 328 (2002) (distinguishing an obligation to pay a debt from an obligation to share one's profits with another).

[17]     The control necessary for a joint venture "is not actual physical control, but the legal right to control the conduct of the other with respect to the prosecution of the common purpose."  *Slaughter v. Slaughter*, 93 N.C. App. 717, 721 (1989), *disc. review allowed*, 325 N.C. 273 (1989), *disc. review dismissed as improvidently allowed*, 326 N.C. 479 (1990).

[18]     The North Carolina Supreme Court has adopted the majority position that "[s]hareholders, creditors or guarantors of corporations generally may not bring individual actions to recover what they consider their share of the damages suffered by the corporation. . . . Recovery is available, naturally, when the defendant owes an individual shareholder, creditor, or guarantor a special duty, or when the individual suffered an injury separate and distinct from that suffered by other shareholders, creditors, or guarantors."  *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 660-661(1997).  Essentially, a shareholder cannot assert claims against a third party for loss of its equity investment in a corporation.  *Id.* at 658-60.  The effect of this rule is to preclude standing for individual causes of action against third parties for wrongs or injuries to a corporation and to prevent a double recovery for the same damages.  In this way, damage alleged by individuals in acts against a corporation is derivative because it arises out of work done pursuant to a contract between third parties.  *Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 133 N.C. App. 522, 526-27 (1999).

[19]     As suggested above, two exceptions apply to this rule.  First, a shareholder may pursue an individual action if it is owed a special duty by the wrongdoer.  *Barger*, 346 N.C. at 659, 661.  Second, a shareholder may also pursue an

individual action if it suffered an injury "separate and distinct from the injury sustained by the other shareholders or the corporation itself." *Id.*

[20]    A special duty is one that the alleged wrongdoer owed directly to the shareholder, creditor or guarantor as an individual, separate and apart from any duty owed to the corporation. *Id.* A special duty has been found when the wrongdoer induced individual action of the shareholder, creditor or guarantor, when the wrongful action constituted a breach of fiduciary duty to the individual or when the wrongdoer performed individualized services to the individual or undertook to personally advise the individual. *Id.* (citing authority).

[21]    In order for an individual to have a separate and distinct injury, there must be a legal basis to support plaintiffs' allegations of an individual loss, a loss that is separate and distinct from any damage suffered by the corporation. *Barger*, 346 N.C. at 659. An injury of a different amount than the injury to the corporation, for example, is not enough to constitute a separate injury. *Energy Investors*, 351 N.C. at 336. An individual's close relationship with a company does not demonstrate such separate and distinct injury. *Aubin v. Susi*, 149 N.C. App. 320, 325-26(2002) (giving no consideration to the defendant's knowledge that the plaintiff was in a close relationship with the injured corporation as 50% owner). Also, consequential damages incurred as a result of personally guaranteeing corporate debts do not constitute a separate and distinct injury from that injury which was suffered by the corporation. *McDaniel v. Alcon Labs., Inc.*, 2007 U.S. Dist. LEXIS 93172.

## VI.

## ANALYSIS

### A.

### GSI Does Not Have Standing to Sue CP&L for Damages

[22]    CP&L did not have a contract or other business relationship with GSI.

[23]    There is an insufficient forecast of evidence that there was a joint venture between GSI and GMC such that would create a cause of action on GSI's behalf against CP&L.  While GSI and GMC do share an intertwined history, GMC has been a stand-alone entity since 2000.  Furthermore, GSI had no right to control the meter-reading contract between GMC and CP&L.  The shared employee benefit plan, absent proof of any sharing of profits or joint control, does not demonstrate the existence of a joint venture.[18]

[24]    The forecast facts do not support a claim that GMC owed GSI, a creditor, any special duty or that GSI suffered an injury separate and distinct from that suffered by the GMC or other creditors.  Indeed, the Complaint does not distinguish between special damages suffered by GMC and GSI.[19]

### B.

### Griffin Does Not Have Standing to Sue CP&L for Damages

[25]    Griffin was not a party to the agreement between CP&L and GMC.

---

[18]  The damages alleged in Plaintiffs' Twelfth Claim for Relief are premised on the existence of a joint venture.  Without such a joint venture, these damages are unsupportable.

[19]  Compl., ¶¶80-81 ("Specifically, as a direct and proximate result of the conduct of the defendants, as herein alleged, Plaintiff Griffin Management suffered special damages as follows. . . . The special damages of Griffin Management and Services, as alleged herein, are the direct and proximate result of the conduct of the defendants. . . .").

[26]     There is no basis for a special duty owed to Griffin.  Griffin's choice to act as guarantor of GMC did not create a special duty owed by CP&L to Griffin.  The forecast facts do not support a claim that CP&L forced Griffin to enter a contract,[20] that any acts of CP&L breached a fiduciary duty owed to Griffin or that CP&L performed individualized services to Griffin or undertook to personally advise him.

[27]     Griffin's injury resulted from his decision to guarantee personally GMC's debts.  Such an injury is not separate and distinct because the injury to GMC is the only source of the damages claimed by Griffin – all stem from Griffin's loss of investment.

VII.

CONCLUSION

[28]     The court concludes that there exist no material issues of fact, and that neither GSI nor Griffin has standing in this civil action.

[29]     Accordingly, Defendants Carolina Power and Light Co. and Progress Energy, Inc.'s Motion for Summary Judgment on the Claims of Plaintiffs Griffin Services, Inc. and John Griffin, Individually, is granted; and said Claims hereby are DISMISSED.

SO ORDERED, this the 13th day of November, 2009.

---

[20]  A contract at issue in the Complaint includes GMC as a party, not Griffin as an individual. *See* Compl. ¶14 ("Upon information and belief, thereafter CP&L . . . demand[ed] that [GMC] enter into a contract with SuperTel whereby [GMC] would grant Supertel the authority to take control of all financial matters of [GMC].  CP&L, by and through Chip Hutchins, did coerce [GMC] to sign the agreement with SuperTel by threatening to terminate [GMC] if it did not sign the agreement demanded by CP&L.")