Gao v. Sinova Specialties, Inc., 2016 NCBC 103.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 6709

JIANXUN "BILL" GAO, individually,
and derivatively on behalf of Sinova
Specialties, Inc.,

        Plaintiff,

   v.

SINOVA SPECIALTIES, INC., a
North Carolina Corporation;
JOHANNES HECKMANN;
YAN "ELLEN" LIU; NEW SHORE,
INC., a North Carolina Corporation,

        Defendants,

    and

SINOVA SPECIALTIES, INC., a
North Carolina Corporation,

        Nominal Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER AND OPINION ON
DEFENDANTS' MOTIONS TO DISMISS
PURSUANT TO RULE 12(b)(6)**

1.    **THIS MATTER** is before the Court upon the following motions in the above-captioned case: (1) Defendant Yan "Ellen" Liu's ("Liu") Motion to Dismiss pursuant to North Carolina Rule of Civil Procedure ("Rule(s)") 12(b)(6); (2) Defendant New Shore, Inc.'s ("New Shore") Motion to Dismiss pursuant to Rule 12(b)(6); (3) Defendant Johannes Heckmann's ("Heckmann" and, collectively with Liu and New Shore, "Defendants") Motion to Dismiss Amended Complaint pursuant to Rule 12(b)(6) (collectively with Liu's and New Shore's Motions to Dismiss pursuant to Rule 12(b)(6), the "Rule 12(b)(6) Motions"); and (4) Nominal Defendant Sinova Specialties,

Inc.'s ("Sinova US") Motion to Dismiss Amended Claim for Judicial Dissolution (the "Motion to Dismiss Dissolution Claim"). The Court addresses other pending motions in this matter in separate orders.

2. For the reasons stated below, the Court hereby **DENIES IN PART** and **GRANTS IN PART** the Rule 12(b)(6) Motions and **DENIES** the Motion to Dismiss Dissolution Claim.

*Greenberg Traurig, LLP, by Gabriel Aizenberg, Andrew Enschedé, and Lucia Marker-Moore, and Brooks, Pierce, McLendon, Humphrey & Leonard LLP, by Jeffrey E. Oleynik and Jessica Thaller-Moran, for Plaintiff Jianxun "Bill" Gao.*

*Higgins & Owens, PLLC, by Sara W. Higgins, for Defendant Yan "Ellen" Liu.*

*Essex Richards, PA, by Marc E. Gustafson, for Defendants Johannes Heckmann and New Shore, Inc.*

*Erwin, Bishop, Capitano & Moss, P.A., by Joseph W. Moss, Jr., for Nominal Defendant Sinova Specialties, Inc.*

Robinson, Judge.

## I. INTRODUCTION

3. Since 2009, Plaintiff Jianxun "Bill" Gao ("Gao") and Defendants Heckmann and Liu have been engaged in business together in manufacturing and selling chemicals to the oil and gas industry. In order to conduct this business, Gao, Heckmann, and Liu formed companies in the United States, China, and Hong Kong. This lawsuit involves only the United States company, Sinova US, and Heckmann and Liu's alleged violations of their fiduciary duties to Sinova US.

4.     Gao's Amended Complaint seeks judicial dissolution of Sinova US pursuant to N.C. Gen. Stat. § 55-14-30, and contains claims against Heckmann, Liu, New Shore, and Calder Overseas ("Calder") for breach of fiduciary duty, constructive fraud, corporate waste, unjust enrichment, and breach of contract.  The Rule 12(b)(6) Motions seek dismissal of all of Gao's direct claims, which include Gao's fourth, sixth, eighth, and tenth causes of action for breach of fiduciary duty, constructive fraud, corporate waste, and unjust enrichment, respectively, and Gao's eleventh cause of action, a derivative claim for breach of contract.  The Motion to Dismiss Dissolution Claim seeks dismissal of Gao's claim for judicial dissolution of Sinova US.

5.     For the reasons explained below, the Court denies the Rule 12(b)(6) Motions in all respects except as to Gao's direct claim for corporate waste, which the Court dismisses with prejudice.  The Court also denies the Motion to Dismiss Dissolution Claim.

## II.     PROCEDURAL HISTORY

6.     Gao first initiated this action on April 8, 2016 by filing a Verified Complaint in Mecklenburg County Superior Court.  The case was designated as a mandatory complex business case by order of the Chief Justice of the Supreme Court of North Carolina dated April 11, 2016.  The action was assigned to the undersigned by order dated April 14, 2016.

7.     Gao filed an Amended Complaint, with the Court's permission, on July 8, 2016.  The Rule 12(b)(6) Motions were filed on August 10, 2016, and the Motion to Dismiss Dissolution Claim was filed on the same day.

8.     All briefing was completed on October 5, 2016.  The Court held a hearing on these and other motions on November 8, 2016.  Both the Rule 12(b)(6) Motions and the Motion to Dismiss Dissolution Claim are now ripe for resolution.

## III.    FACTUAL BACKGROUND

9.     The Court does not make findings of fact on motions to dismiss under Rule 12(b)(6), but only recites those facts included in the Amended Complaint that are relevant to the Court's determination of the Rule 12(b)(6) Motions and the Motion to Dismiss Dissolution Claim.

A.     <u>The Parties</u>

10.     Gao is a chemical engineer and a Chinese citizen and resident.  (Am. Compl. ¶ 8.)

11.     Heckmann is a German citizen who resides in Matthews, North Carolina.  (Am. Compl. ¶ 10.)

12.     Liu is a Chinese citizen and resident, but maintains a place of business in Matthews, North Carolina.  (Am. Compl. ¶ 11.)

13.     Sinova US is a North Carolina corporation with its principal place of business in Matthews, North Carolina.  (Am. Compl. ¶ 9.)  Sinova US's shareholders are Heckmann, Liu, and Gao.  (Am. Compl. ¶ 27.)

14.     New Shore is a North Carolina corporation with its principal place of business in Matthews, North Carolina.  (Am. Compl. ¶ 12.)  Heckmann is the sole shareholder of New Shore.  (Am. Compl. ¶ 12.)

15. Calder is a British Virgin Islands company with its principal place of business in Tortola, British Virgin Islands. (Am. Compl. ¶ 13.) Liu is the sole shareholder of Calder. The Court has dismissed Calder as a party to this lawsuit because the Court lacks personal jurisdiction over Calder.

B. Related Entities

16. Heckmann, Liu, and Gao formed Sinova Chemicals Limited, formerly known as Sinomax Solutions Co., Limited, ("Sinova HK"), a Hong Kong corporation, on March 28, 2011. (Am. Compl. ¶ 14.)

17. Heckmann, Liu, and Gao formed Sinomax Specialties Inc. (Beijing), also known as Sinova (Beijing) Catalyst Technology Co., Ltd., ("Sinova Beijing" and, collectively with Sinova US and Sinova HK, the "Sinova Companies"), a Chinese corporation, on July 10, 2012. (Am. Compl. ¶ 15.)

18. Liu and her mother, Sujin Feng, formed Sino Chem Chemical Co., Limited, also known as Xinnuokai (Beijing) Chemical Co., Ltd., ("Sino Chem"), a Chinese corporation, on July 5, 2007. (Am. Compl. ¶ 17.)

19. Sino Chem controls a Chinese company called Sinova Specialties Ltd. (Beijing), also known as Sinova (Beijing) Chemical Technology Co., Ltd., ("Chemical Technology"), which was formed on November 11, 2013. (Am. Compl. ¶ 18.) Gao alleges that, although Chemical Technology uses the Sinova name, such use is without the Sinova Companies' authorization, and that Chemical Technology is not affiliated with the Sinova Companies. (Am. Compl. ¶ 18.)

20.     Sino Chem also controls North America (Beijing) Invest Holding Limited, also known as North America Sequoia (Beijing) Investment Group Co., Ltd., ("North America Sequoia"), which was formed in 2014.  (Am. Compl. ¶ 19.)

C.     Organization of the Sinova Companies

21.     Heckmann, Liu, and Gao formed Sinova US in 2009 for the purpose of marketing, producing, and selling chemical compounds to the pharmaceutical, oil, and chemical industries.  (Am. Compl. ¶ 26.)  At the time of Sinova US's formation, its stock ownership was as follows: Heckmann owned 45%, Liu owned 30%, and Gao owned 25%.  (Am. Compl. ¶ 27.)

22.     In 2011, Heckmann, Liu, and Gao acquired all interest in Sinova HK and initially maintained the same stock ownership allocation—45% for Heckmann, 30% for Liu, and 25% for Gao.  (Am. Compl. ¶ 28.)  Shortly after the Sinova HK acquisition, however, Heckmann, Liu, and Gao agreed to adjust Gao's ownership in the Sinova Companies to 30%.  (Am. Compl. ¶ 29.)  To effectuate this adjustment, the shareholders agreed that Heckmann would transfer 5% of his shares in Sinova HK to Gao.  After this transfer, Sinova HK's ownership allocation was as follows: Heckmann owned 40%, and Liu and Gao both owned 30%.  (Am. Compl. ¶ 30.)

23.     To ensure that ownership across all of the Sinova Companies was consistent, Heckmann agreed to also transfer 5% of his interest in Sinova US and Sinova Beijing to Gao.  (Am. Compl. ¶ 31.)  Gao alleges that Heckmann confirmed on numerous occasions that the ownership of Sinova US had been adjusted to reflect Gao's 30% ownership interest.  (Am. Compl. ¶ 32.)  For example, on April 16, 2014,

Gao wrote in a text message to Heckmann: "As [b]oth [Sinova Beijing] and [Sinova US] are the same share ratio[, f]or [Liu] and me, pay from BJ as RMB. For you, pay from US as USD. Keep the ratio [a]s 3:3:4, then it will be fair." Heckmann responded: "Sounds good. Ok." (Am. Compl. ¶ 32.) Additionally, all distributions and votes after 2011 have reflected and been consistent with Gao having a 30% ownership interest. (Am. Compl. ¶ 33.)

24. In addition to being Sinova US's only shareholders, Heckmann, Liu, and Gao are also directors and officers. Heckmann is the President, Gao is the Treasurer, and Liu is the Secretary. (Am. Compl. ¶ 35.) Each shareholder also holds the same officer role and is a director in Sinova Beijing and Sinova HK. (Am. Compl. ¶ 36.) Heckmann has primarily been responsible for sales and marketing for the Sinova Companies. (Am. Compl. ¶ 36.) Liu has primarily been responsible for management of the Sinova Companies' operations. (Am. Compl. ¶ 36.) Gao has been responsible for product development. (Am. Compl. ¶ 36.)

25. Gao focused his efforts on research and development, and relied on Heckmann and Liu to sell the products and manage the Sinova Companies' operations. (Am. Compl. ¶ 38.) Gao alleges that he trusted Heckmann and Liu and reasonably believed that their loyalty to the Sinova Companies was undivided. Accordingly, Gao limited his involvement in the day-to-day operation and administration of the Sinova Companies. (Am. Compl. ¶ 38.)

26. The Sinova Companies, including Sinova US, eventually sold their compounds and chemicals to major companies such as Shell Chemical, Bayer

Corporation, Dow Agroscience, E.I. DuPont, and BASF. (Am. Compl. ¶ 39.) From 2011 to mid-2015, in the United States alone, Sinova US generated more than $41,500,000 in revenues. (Am. Compl. ¶ 40.)

D.    Company Agreements

27.    On June 30, 2012, Heckmann, Liu, and Gao entered into a CDA and Non Compete Agreement (the "CDA"). (*See* Am. Compl. Ex. A.) The CDA provides that "[t]he three persons in this agreement" are Heckmann, Liu, and Gao, and that "[t]he company in this agreement is Sinova Specialties Inc. (Beijing) and its related company in USA, HK and China." (Am. Compl. Ex. A 1.) The CDA lists the share allocation between the shareholders as 40% for Heckmann, 30% for Liu, and 30% for Gao. The CDA also imposed an obligation upon each shareholder to "keep the secrecy of the company" and not to "leak the market, technology and operation secrecy to any third party directly or indirectly at any time." (Am. Compl. Ex. A 2.) Finally, the CDA provides that "[a]nyone who breaches [the CDA] shall pay RMB 5million to the company. At the same time, he/she shall compensate all the lost that [sic] caused to the company by his/her violating [the CDA]." (Am. Compl. Ex. A 3–4.)

28.    On September 16, 2012, Heckmann, Liu, and Gao entered into a board agreement (the "2012 Board Agreement") that permitted each "to set up non-related other companies," but barred each from doing "business [to] compete" with Sinova US and Sinova Beijing, providing or accepting any "product or service" of Sinova US or Sinova Beijing, and "separat[ing] the existing business of [Sinova US or Sinova Beijing] in any method." (Am. Compl. Ex. B 1.) The 2012 Board Agreement further

states that "[p]rofit shall be allocated according to percentage of the share." (Am. Compl. Ex. B 2.)

29. Beginning in 2013, Heckmann, Liu, and Gao discussed the separation of their future businesses and development activities. Gao alleges that the concept was that Sinova US would continue to operate, and that Heckmann, Liu, and Gao would remain officers, directors, and shareholders in the Sinova Companies to sell and market an agreed-upon set of products. Each shareholder would also, however, be free to engage in non-competing businesses and develop non-competing products. (Am. Compl. ¶ 50.)

30. On January 15, 2014, Heckmann, Liu, and Gao entered into a board agreement (the "2014 Board Agreement"), by which the existing business of the Sinova Companies was to be maintained but not developed beyond seven products specified in that agreement. (Am. Compl. ¶ 54.)

31. The 2014 Board Agreement contained several provisions that were to govern the shareholders' relationship going forward by:

- expressly reaffirming the shareholders' prior confidentiality and non-compete obligations set forth in the CDA and the 2012 Board Agreement, (Am. Compl. Ex. C ¶ 2);

- providing that "[e]ach board member will adhere to professional rules of conduct toward each other and promises to promote the common projects to the best of their abilities and not to cause adverse effects to another board member.

Should such action occur damages may be sought," (Am. Compl. Ex. C ¶ 11); and

- providing that "[a]ll expenditures for common projects shall be approved by 2 board members prior to release of the funds," (Am. Compl. Ex. C ¶ 18).

32. The 2014 Board Agreement also states that "[a]ny amount above $3,500,000 is to be distributed at the end of the quarter in the ratio of 30/30/40 to [Gao, Liu, and Heckmann,] respectively." (Am. Compl. Ex. C ¶ 8.) Although the 2014 Board Agreement states that Gao is a 25% shareholder of Sinova US, (Am. Compl. Ex. C. ¶ 21), Gao alleges that this representation was mistaken, incorrect, contrary to prior and future corporate resolutions and practices, including all future distributions, and contradictory to paragraph eight in the 2014 Board Agreement. (Am. Compl. ¶ 59.)

E. Alleged Fraudulent and Insider Transactions

33. Gao alleges that, throughout the time that Heckmann and Liu ran the day-to-day operations and administration of the Sinova Companies, and especially after entering into the 2014 Board Agreement, Heckmann and Liu engaged in numerous unapproved, fraudulent, and improper insider transactions and converted Sinova US's confidential trade secret information and technology without Gao's knowledge or consent. (Am. Compl. ¶¶ 80, 83.)

34. For example, Heckmann and Liu allegedly caused the registration of three patents in China for chemical compounds owned by Sinova US—which Heckmann had told Gao had no viable market—in the name of Chemical Technology, a company

under Liu's control. Heckmann and Liu also falsely listed Heckmann as an inventor of the intellectual property. (Am. Compl. ¶ 84.)

35. In addition, Gao alleges that Heckmann, with Liu's consent and assistance, caused Sinova US to make improper payments to New Shore. (Am. Compl. ¶ 86.) The Amended Complaint provides three examples of such alleged improper payments which were unapproved by Gao: (1) a $60,000 "marketing service fee" to New Shore on January 1, 2014; (2) a $1,285,866.30 transfer from Sinova US to New Shore at some time prior to December 26, 2014, which was initially characterized as a loan, but was later characterized as a fee; and (3) a $320,000 payment from Sinova US to New Shore on July 23, 2015, which was initially described as a "distribution," and later re-characterized as a "marketing service fee." (Am. Compl. ¶¶ 87–100.)

36. Gao also alleges that Heckmann and/or Liu caused Sinova US to make improper payments to Liu. (Am. Compl. ¶ 101.) The Amended Complaint contains several examples of such alleged improper payments, which were unapproved by Gao, including: (1) a $995,274.78 "loan" from Sinova US to Liu; (2) a $120,000 "production management fee" to Liu; (3) a $240,000 "loan" to Liu; and (4) three unapproved payments to Chemical Technology totaling $358,186. (Am. Compl. ¶¶ 102–118.)

37. Further, Gao alleges that, as part of their scheme to siphon funds out of Sinova US for their own benefit and to the detriment of Sinova US and Gao, Heckmann and Liu engaged in various transactions that involved moving revenues paid to Sinova US from the United States to offshore accounts through intermediary entities such as Calder, and shipping Sinova US products manufactured in China

through "circuitous routes." Specifically, Gao alleges that, in 2012, Heckmann and Liu caused Sinova US revenues of at least $4,300,000 to be siphoned out of Sinova US for the benefit of Liu and Calder.

38. Gao alleges that, beginning in 2015, Liu and Heckmann shipped Sinova US-owned chemicals and compounds through Liu's and Heckmann's own companies to avoid sharing income in Sinova US. (Am. Compl. ¶¶ 127–28.)

39. On May 15, 2015, Heckmann and Liu executed a "Sinova Specialties Inc. Resolution of the Shareholders' Meeting," purporting to memorialize a shareholders' meeting that occurred on May 15, 2015. (Am. Compl. ¶ 137; *see* Am. Compl. Ex. Q.) Despite Gao's absence from this meeting, the resolution states that all shareholders were present for and participated in the shareholder meeting. (Am. Compl. ¶ 137.) The resolution purports to approve: (1) a "supplier management service fee" of RMB 1.5 million to Chemical Technology; (2) a "project management consulting service fee" of RMB 1.75 million to a company owned by Liu called "Sequoia Technologies Development Center"; (3) a "market consulting service fee" of $376,344 to New Shore; and (4) a "tech service fee" to a company owned by Gao called "PTG Advanced Catalyst Co., Limited" of RMB 1.75 million. (Am. Compl. ¶ 138.)

40. Heckmann and Liu executed the resolution, and transmitted it to Gao for his signature. (Am. Compl. ¶ 140.) Gao refused to approve and execute the resolution. (Am. Compl. ¶ 144.) Further, Gao did not receive the payment for the "tech service fee" described in the resolution. (Am. Compl. ¶ 145.)

## IV. LEGAL STANDARD

41. In ruling on the Rule 12(b)(6) Motions and the Motion to Dismiss Dissolution Claim, the Court construes the Amended Complaint liberally and reviews the allegations of the Amended Complaint in the light most favorable to Gao. *See Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009). The Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987).

42. Dismissal of a claim pursuant to Rule 12(b)(6) is proper "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the plaintiff's claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985); *see also Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986). Otherwise, "a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton v. Duke*, 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970) (emphasis omitted).

43. The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620

S.E.2d 873, 880 (2005). The Court can also ignore a party's legal conclusions set forth in its pleading. *McCrann v. Pinehurst, LLC*, 225 N.C. App. 368, 377, 737 S.E.2d 771, 777 (2013).

## V. RULE 12(b)(6) MOTIONS

44. The Rule 12(b)(6) Motions seek dismissal of all of Gao's direct claims, which include Gao's fourth, sixth, eighth, and tenth causes of action for breach of fiduciary duty, constructive fraud, corporate waste, and unjust enrichment, respectively, and Gao's eleventh cause of action, a derivative claim for breach of contract. The Rule 12(b)(6) Motions also seek to dismiss Gao's first cause of action for judicial dissolution, but because those Motions rely on the arguments made by Sinova US in its Motion to Dismiss Dissolution Claim, the Court will address that claim in its analysis of the Motion to Dismiss Dissolution Claim below.

### A. Gao's Direct Claims

45. In North Carolina, "[s]hareholders . . . of corporations generally may not bring individual actions to recover what they consider their share of the damages suffered by the corporation." *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 660, 488 S.E.2d 215, 220–21 (1997). Despite this general rule, however,

> a "shareholder may maintain an individual action against a third party for an injury that directly affects the shareholder, even if the corporation also has a cause of action arising from the same wrong," under two circumstances: (1) where "the wrongdoer owed [the shareholder] a special duty[,]" and (2) where the shareholder suffered a personal injury—one that is "separate and distinct from the injury sustained by the other shareholders or the corporation itself."

*Raymond James Capital Partners, L.P. v. Hayes*, 789 S.E.2d 695, 700 (N.C. Ct. App. 2016) (quoting *Barger*, 346 N.C. at 659, 488 S.E.2d at 219).

46.    Thus, for Gao to maintain direct claims against Defendants, he must allege either (1) that Defendants owed Gao a special duty, or (2) that Gao suffered a personal injury separate and distinct from the injury suffered by Sinova US.  Defendants contend that Gao has not alleged either a special duty or a separate and distinct injury.

47.    As to the special duty exception, the special duty that is required for a plaintiff to maintain an individual action

> may arise from contract or otherwise.  To support the right to an individual lawsuit, the duty must be one that the alleged wrongdoer owed directly to the shareholder as an individual.  The existence of a special duty thus would be established by facts showing that defendants owed a duty to plaintiffs that was personal to plaintiffs as shareholders and was separate and distinct from the duty owed the corporation.  A special duty therefore has been found when the wrongful actions of a party induced an individual to become a shareholder; when a party violated its fiduciary duty to the shareholder; when the party performed individualized services directly for the shareholder; and when a party undertook to advise shareholders independently of the corporation.

*Barger*, 346 N.C. at 654, 488 S.E.2d at 217 (internal citations omitted).  Although *Barger* did not purport to identify an exhaustive list, the Court of Appeals has concluded that "the special duty exception clearly requires an articulation of some duty owed to a plaintiff that is distinct from the general fiduciary duties directors and officers owe to the corporation."  *Hayes*, 789 S.E.2d at 701.

48.    Gao argues that Heckmann and Liu owes him a special duty because he is a minority shareholder in Sinova US, and Heckmann and Liu together form a

majority block of shareholders. In *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 537 S.E.2d 248 (2000), the Court of Appeals stated its view that "minority shareholders in a closely held corporation who allege wrongful conduct and corruption against the majority shareholders in the corporation may bring an individual action against those shareholders, in addition to maintaining a derivative action on behalf of the corporation." *Id.* at 405, 537 S.E.2d at 259; *see also Blythe v. Bell*, 2013 NCBC LEXIS 17, at *13–14 (N.C. Super. Ct. Apr. 8, 2013) ("[I]n certain instances, a group of owners of a closely-held corporation may be considered a majority even though neither alone owned a majority.").

49. This view does not, however, represent a determination by the Court of Appeals that "the general rule favoring derivative actions must be abandoned in all instances so that a minority owner always has a right to proceed individually to assert breach of fiduciary claims for injury to the corporation where the other owners take action as a majority which disagrees with the minority owner's view as to what best serves the corporation's interest." *Blythe*, 2013 NCBC LEXIS 17, at *14. Rather, *Norman* should be considered in light of its particular facts and the Court of Appeals' recognition that applying the general rule that a corporate shareholder may not bring an individual action to the facts in that case would actually have "disserve[d] the corporation's interest which the general rule seeks to protect." *Id.* at *15.

50. In *Norman*, plaintiffs alleged that defendants (1) were acting in concert, (2) owned a majority of the stock in the corporation, (3) were officers of the corporation, and (4) controlled the board of directors of the corporation. The Court of Appeals held

that these allegations are sufficient to "give rise to a fiduciary relationship between plaintiffs and the defendants and establish that defendants owed plaintiffs a 'special duty' within the meaning of the *Barger* decision." *Norman*, 140 N.C. App. at 407, 537 S.E.2d at 260. Here, Gao alleges that Heckmann and Liu are the majority and controlling shareholders of Sinova US, (Am. Compl. ¶ 65), that they were acting in concert in furtherance of their alleged wrongful transactions and conduct, (Am. Compl. ¶ 75), that they were both officers of Sinova US, (Am. Compl. ¶ 35), and that they have actual domination and control over the board of directors of Sinova US, (Am. Compl. ¶ 68).

51. Moreover, the factors that the Court of Appeals considered that weighed in favor of allowing the individual shareholder plaintiffs to proceed in a direct action against the director defendants in *Norman* are also present here, at least as alleged in the Amended Complaint. First, if Gao was not allowed to proceed in a direct action, any recovery he would receive in this action would go to Sinova US, and thus, under these facts as alleged, be under the control of the alleged wrongdoers, Heckmann and Liu. *See Norman*, 140 N.C. App. at 405, 537 S.E.2d at 259. Additionally, there is no indication in the record that Sinova US is insolvent, or that the rights of Sinova US's creditors would otherwise be prejudiced by the possibility of an individual recovery. *See id.* at 406, 537 S.E.2d at 259. There appears to be no danger of multiple lawsuits, since all of Sinova US's shareholders are parties to this litigation. *See id.*

52. Therefore, the Court concludes that, under the facts as alleged in the Amended Complaint, Gao may properly pursue his claims against Heckmann and Liu

both as direct and derivative claims. Moreover, as taught by *Norman*, because Gao alleges that New Shore is "under the control of some or all of the [individual] defendants or [has] entered into a conspiracy with the individual defendants to siphon off corporate assets from [Sinova US], to deprive [Sinova US] of corporate opportunities, and to redirect those assets and opportunities to the individual defendants[,] . . . [New Shore is] inextricably wedded to the individual defendants. [Gao] can, therefore, maintain a direct action against [New Shore] under the circumstances alleged in the [Amended Complaint]." *Id.*

53. Defendants argue that, as a result of Gao's voluntary limited involvement in the management and operation of Sinova US, Heckmann and Liu could not have owed a fiduciary duty to Gao. This argument is without merit. Gao alleges that, after the 2014 Board Agreement, he limited his involvement in the day-to-day operation and administration of the Sinova Companies, and that he placed his trust in Heckmann and Liu, based on their affirmative representations that they would act in the best interests of Sinova US. The Court believes these allegations actually weigh in favor of finding an individual fiduciary duty owed to Gao, in addition to the duties otherwise owed to Sinova US. *See Blythe v. Bell*, 2013 NCBC LEXIS 7, at *34 (N.C. Super. Ct. Feb. 4, 2013).

54. Because Gao alleges a special duty owed to him by Defendants, he should be allowed to proceed on his individual claims to the same extent as his derivative claims brought on behalf of Sinova US.

55. Defendants argue an additional and separate basis for dismissal of Gao's direct claim for corporate waste. Defendants point out that "North Carolina does not recognize corporate waste as an independent cause of action," because such a claim is subsumed within a breach of fiduciary duty claim. *Soft Line, S.p.A. v. Italian Homes, LLC*, 2015 NCBC LEXIS 6, at *15–16 (N.C. Super. Ct. Jan. 16, 2015). The Court agrees that Plaintiff's Amended Complaint improperly sets out Defendants' alleged waste as a separate, albeit non-existent, cause of action. Accordingly, the Court dismisses Gao's direct claim for corporate waste.

B. Gao's Derivative Claim for Breach of Contract

56. Gao's eleventh cause of action is a derivative claim brought on behalf of Sinova US against Heckmann and Liu for their alleged breach of the CDA. Gao alleges that Heckmann and Liu have violated the CDA by publicly disclosing confidential and proprietary intellectual property in their registration of three patents for Sinova US-owned compounds in China.

57. Defendants seek dismissal of this claim on the basis that such a claim does not belong to Sinova US. Defendants argue that Gao failed to acknowledge that the confidential and propriety information that was disclosed through registration of the patents belonged specifically to SNVUS. However, Gao specifically alleges that the three compounds for which the patents were registered were Sinova US-owned compounds. (Am. Compl. ¶ 84.) Accordingly, the Court rejects this argument.

58. Defendants also argue that the claim should be dismissed because the right to recover damages under the agreement belongs to Sinova Beijing, rather than

Sinova US. Contrary to Defendants' argument, however, the CDA provides that "[t]he company in this agreement is Sinova Specialties Inc. (Beijing) *and its related company in USA, HK and China*." (Am. Compl. Ex. A) (emphasis added). The CDA is on Sinova US letterhead. There is nothing in the CDA that clearly contradicts the allegation that Sinova US was a party to the CDA, and thus entitled to any damages for its alleged breach. Accordingly, the Court also rejects this argument.

59. For these reasons, the Court concludes that Defendants' Rule 12(b)(6) Motions should be denied to the extent they seek dismissal of Gao's eleventh cause of action.

60. In sum, the Court denies the Rule 12(b)(6) Motions in all respects except as to Gao's direct claim for corporate waste. The Court concludes that Gao's direct claim for corporate waste should be dismissed with prejudice.

## VI. MOTION TO DISMISS DISSOLUTION CLAIM

61. Gao's first cause of action seeks judicial dissolution of Sinova US pursuant to N.C. Gen. Stat. § 55-14-30. Gao contends that dissolution of Sinova US is appropriate on three separate grounds. First, he contends that there is a deadlock among the directors and shareholders that the shareholders are unable to break and, as a result, Sinova US's business cannot be conducted to the advantage of all shareholders. *See* N.C. Gen. Stat. § 55-14-30(2)(i). Second, he contends that liquidation is reasonably necessary for the protection of Gao's rights or interests. *See id.* § 55-14-30(2)(ii). Third, he contends that Sinova US's assets are being misapplied and wasted. *See id.* § 55-14-30(2)(iv). Even though Gao purports

to bring derivative claims on behalf of Sinova US, Sinova US, through its own separately retained counsel, seeks dismissal of Gao's claim in its entirety, asserting that dissolution is not an appropriate remedy under the facts as alleged in the Amended Complaint.

A.     Section 55-14-30(2)(i)

62.     Under section 55-14-30(2)(i), in order to state a claim for judicial dissolution, a plaintiff must allege that (1) "there is a deadlock among the directors in the management of the corporation"; (2) "the shareholders are unable to break the deadlock"; and (3) "the corporation is suffering or in danger of suffering irreparable injury, or is no longer able to conduct its business to the advantage of the shareholders generally." *Foster v. Foster Farms*, 112 N.C. App. 700, 706, 436 S.E.2d 843, 847 (1993) (citing N.C. Gen. Stat. § 55-14-30(2)(i)).

63.     As to the first condition, Gao alleges that there is a deadlock among the directors with respect to certain transactions—namely, insider, conflict of interest transactions—due to statutory veto rights afforded Gao. N.C. Gen. Stat. § 55-8-31 provides that a "conflict of interest transaction is a transaction with the corporation in which a director of the corporation has a direct or indirect interest." N.C. Gen. Stat. § 55-8-31(a). Such a transaction is voidable unless: (1) the material facts of the transaction and the director's interest were disclosed to disinterested directors, and those directors approved the transaction; (2) the material facts of the transaction and the director's interest were disclosed to disinterested shareholders, and those

shareholders approved the transaction; or (3) the transaction was fair to the corporation. *Id.*

64.     Gao contends that Heckmann and Liu each have engaged in numerous conflict of interest transactions that must be approved by two non-interested directors or shareholders.   According to Gao, such transactions can never be authorized by disinterested directors without Gao's approval, because, on Sinova US's three-member board, there are only two disinterested directors.

65.     The Amended Complaint admits, however, that as to conflict of interest transactions engaged in by Liu, such transactions can be authorized by disinterested shareholders without Gao's approval, because Heckmann, a disinterested shareholder as to such transactions, is at least a 40% shareholder, whereas Gao is at most a 30% shareholder.   Accordingly, it is only a narrow category of transactions that the alleged deadlock among directors applies to—the alleged conflict of interest transactions engaged in by Heckmann.

66.     Gao identifies in his Amended Complaint three such transactions—a $60,000 "marketing service fee" paid by Sinova to New Shore, a $1,285,866.30 "loan" to New Shore, and a $320,000 payment to New Shore that was originally characterized as a distribution, but later re-characterized as a "marketing fee."   Gao also alleges that these are merely examples, and that there were various other unapproved, fraudulent, and improper transactions. (*See* Am. Compl. ¶¶ 80, 86–100.)

67.     Defendants initially argue that even these three transactions can be, and were, approved by a majority of disinterested shareholders because Gao only owns

25% of Sinova US's shares, not 30% as Gao alleges. Thus, Liu, who is a 30% shareholder, owns a majority of disinterested shares as to these transactions and voted to approve the transactions. Defendants point to the 2014 Board Agreement, which is attached to the Amended Complaint, and which identifies Gao as only a 25% shareholder of Sinova US. (*See* Am. Compl. Ex. C 7.) Although the Court may "reject allegations that are contradicted by the documents attached [to] . . . the complaint," *Laster*, 199 N.C. App. at 577, 681 S.E.2d at 862, Gao alleges that the 2014 Board Agreement is incorrect in this regard. Gao also attaches to the Amended Complaint several other documents that support Gao's allegation of his 30% ownership. (*See, e.g.*, Am. Compl. Ex. 2.) The Court therefore, for the purposes of this Motion to Dismiss Dissolution Claim, accepts Gao's allegation of his 30% ownership in Sinova US as true.

68. Nevertheless, that does not resolve the question of whether the inability for disinterested shareholders to approve the above three transactions without Gao's approval constitutes a deadlock in the management of the company.

69. In *Foster*, the Court of Appeals looked to whether the directors were deadlocked as to a "major management decision." *See Foster*, 112 N.C. App. at 707, 436 S.E.2d at 848. In addition to the three transactions identified in the Amended Complaint that are potentially voidable under section 55-8-31, Gao also alleges that there are other, yet-identified transactions in addition to these three. If proven, deadlock as to all such transactions, taken together, could potentially constitute a deadlock as to a major management decision. Accordingly, the Court concludes that

Gao has properly alleged deadlock among the directors in the management of Sinova US.

70. As to the second condition, Gao alleges that the shareholders of Sinova US are unable to break the deadlock in management among the directors. Defendants argue, however, that any deadlock at the director level is resolvable by the shareholders because, even if Gao is assumed to own 30%, Heckmann and Liu, who combined own 70% of Sinova US's shares, can vote Gao off the board of directors at any time. Gao argues in response that Heckmann and Liu cannot vote Gao off the board because they agreed, in the 2014 Board Agreement, that "[e]ach board member will adhere to professional rules of conduct toward each other and . . . not to cause adverse effects to another board member." (Am. Compl. Ex. C.) The Court concludes that such an allegation is sufficient to satisfy the second condition of dissolution under section 55-14-30(2)(i).

71. Finally, as to the third condition, Gao alleges that Sinova US is suffering irreparable injury, and is no longer able to conduct its business to the advantage of all of its shareholders. Defendants contend that, because Sinova US is solvent and profitable, it cannot be suffering irreparable injury or be unable to conduct business to the advantage of the shareholders. However, in *Foster*, the Court of Appeals noted that, while factors such as profitability and ability to conduct everyday operations without incident are to be considered, there may be other factors that support a finding that the corporation's business could not be conducted to the advantage of the shareholders generally. *Foster*, 112 N.C. App. at 708, 436 S.E.2d at 848–49.

72. Here, while the Amended Complaint admits that Sinova US is profitable, Gao also alleges that, as a result of the alleged deadlock, Heckmann and Liu have received distributions when Gao has not, and that Heckmann and Liu, either personally or through their wholly-owned companies, have benefitted from transactions involving Sinova-US assets and funds, when Gao has not. The Court finds these allegations sufficient to state a claim for entitlement to judicial dissolution under section 55-14-30(2)(i).

B. Section 55-14-30(2)(ii)

73. Section 55-14-30(2)(ii) provides that the Court may dissolve a corporation if it is established that "liquidation is reasonably necessary for the protection of the rights or interests of the complaining shareholder." N.C. Gen. Stat. § 55-14-30(2)(ii). In *Meiselman v. Meiselman*, 309 N.C. 279, 307 S.E.2d 551 (1983), the North Carolina Supreme Court set out the analysis a trial court should follow in determining whether to order dissolution under former N.C. Gen. Stat. § 55-125(a)(4)—what is now N.C. Gen. Stat. 55-14-30(2)(ii). The trial court must (1) "define the 'rights or interests' the complaining shareholder has in the corporation," and (2) whether dissolution is "'reasonably necessary' for the protection of those 'rights or interests.'" *Meiselman*, 309 N.C. at 301, 307 S.E.2d at 564. To sufficiently state a claim for entitlement to dissolution under this subsection sufficient to survive a Rule 12(b)(6) motion, Gao must allege that: "(1) he had one or more substantial reasonable expectations known or assumed by [Heckmann and Liu]; (2) the expectation has been frustrated; (3) the frustration was without fault of [Gao] and was in large part beyond his control; and

(4) under all of the circumstances of the case, [Gao] is entitled to some form of equitable relief." *Id.*

74. The "'rights or interests' must be defined with reference to the 'rights or interests' the complaining shareholder has under the facts of the particular case—the 'reasonable expectations' the participants' relationship has generated." *Id.* at 303, 307 S.E.2d at 565. In a close corporation, these rights or interests may include secure employment and meaningful participation in the management of the business. *Id.* at 302, 307 S.E.2d at 564–65.

75. Gao alleges that his reasonable expectations, known by Heckmann and Liu, include: (1) that Heckmann and Liu would act only in the bester interests, and not to the detriment, of Sinova US; (2) that all Sinova US property and assets would be kept confidential and only would be used for the benefit of Sinova US; (3) that all distributions to shareholders would be made contemporaneously and based upon each shareholder's pro rata ownership interests; (4) that all insider transactions would be fully disclosed, fair, and subject to the vote of a majority of disinterested directors and/or shareholders; and (5) that Gao would have complete access to Sinova US's books and records. (Am. Compl. ¶ 177.)

76. Gao also alleges that these reasonable expectations have been frustrated by Heckmann and Liu: (1) converting Sinova US's intellectual property for their own benefit; (2) publicly disclosing and failing to maintain confidential intellectual property that Gao developed for the benefit of Sinova US; (3) engaging in improper insider transactions without notice to or with the consent of Gao; (4) denying Gao full

access to, and examination of, Sinova US's books and records; and (5) freezing Gao out of Sinova US's business despite his substantial equity therein and his development of Sinova US's successful products. (Am. Compl. ¶ 178.) Gao also alleges that the frustration of Gao's expectations was completely outside Gao's control, as Heckmann and Liu engaged in their wrongful conduct without Gao's knowledge or consent. (Am. Compl. ¶ 179.)

77. The Court concludes that the above allegations are sufficient to allege a claim for dissolution under section 55-14-30(2)(ii). If proven, Gao's allegations of his reasonable expectations, and the frustration thereof, with respect to Sinova US are of the type that may justify judicial dissolution under *Meiselman*.

C. Section 55-14-30(2)(iv)

78. Finally, section 55-14-30(2)(iv) provides that the Court may dissolve a corporation if it is established that "the corporate assets are being misapplied or wasted." N.C. Gen. Stat. § 55-14-30(2)(iv). Although there is little case law in North Carolina defining what constitutes "corporate waste," in Delaware, "[t]he judicial standard for determination of corporate waste is well developed. Roughly, a waste entails an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade." *Krieger v. Johnson*, 2014 NCBC LEXIS 13, at *21 (N.C. Super. Ct. Apr. 30, 2014); *see also First Union Corp. v. Suntrust Banks, Inc.*, 2001 NCBC LEXIS 7, at *31 (N.C. Super. Ct. Aug. 10, 2001) ("North Carolina courts have frequently looked to Delaware for guidance [on matters of corporate law] because of the special expertise and body

of case law developed in the Delaware Chancery Court and the Delaware Supreme Court.").

79. Gao alleges that Heckmann and Liu have misapplied or wasted corporate assets by (1) misappropriating Sinova US's intellectual property, and (2) causing Sinova US to make payments to themselves for no consideration. More specifically, the Amended Complaint alleges that Heckmann and Liu caused the registration of patents in China for three compounds, which were owned by Sinova US but registered in the name of Chemical Technology. (Am. Compl. ¶¶ 84–85.) Gao also alleges that the alleged self-dealing, conflict of interest transactions that are described above constitute corporate waste. These transactions, as described in the Amended Complaint, if they occurred, at the very least represent a misapplication of corporate assets. Accordingly, the Court concludes that Gao has sufficiently alleged a claim for judicial dissolution under section 55-14-30(2)(iv).

80. In sum, the Court concludes that Gao has sufficiently stated a claim for judicial dissolution under N.C. Gen. Stat. § 55-14-30(2)(i), (ii), and (iv), and that the Motion to Dismiss Dissolution Claim should be denied in its entirety.

## VII.  CONCLUSION

81. For the foregoing reasons, the Court hereby **DENIES** the Rule 12(b)(6) Motions, except as to Gao's direct claim for corporate waste, which the Court hereby **DISMISSES** with prejudice. The Court also hereby **DENIES** the Motion to Dismiss Dissolution Claim.

**SO ORDERED**, this the 21st day of December, 2016.


/s/ Michael L. Robinson
_____
Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases