Norment v. Rabon, 2022 NCBC 32.

STATE OF NORTH CAROLINA

WAKE COUNTY

JOHN NORMENT,

      Plaintiff,

v.

ROBERT GARY RABON, JAMES
MIKLOSKO, ADVANTAGE
LENDING LLC, CAVALIER
MORTGAGE GROUP, INC.,
STEEL HOLDINGS, LLC and
ADVANTAGE LENDING, a
common law partnership,

      Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 7014

**ORDER AND OPINION ON
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment as to Each of the Plaintiff Norment's Causes of Action ("Motion," ECF No. 160). The Court, having considered the Motion, the briefs, the arguments of counsel, and all applicable matters of record, CONCLUDES that the Motion should be GRANTED, in part, and DENIED, in part, for the reasons set forth below.

*Oak City Law LLP by Robert E. Fields III, Samuel Piñero, and Caroline L. Trautman, for Plaintiff John Norment*

*The Farrell Law Group, P.C. by Richard W. Farrell, for Defendants Robert Gary Rabon, James Miklosko, and Advantage Lending, LLC.*

Davis, Judge.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. "The Court does not make findings of fact on motions for summary judgment; rather, the Court summarizes material facts it considers to be

uncontested.*" *Hyosung USA Inc. v. Travelers Prop. Cas. Co. of Am.*, 2021 NCBC LEXIS 115, at **3 (N.C. Super. Ct. Dec. 16, 2021) (cleaned up). However, the Court notes throughout this opinion the existence of key factual disputes that bear upon Defendants' Motion.

2. The facts giving rise to this case arise from the business relationship between three individuals—John Norment, James Miklosko, and Robert Gary Rabon. Norment and Miklosko were the sole directors and 50% co-owners of Cavalier Mortgage Group, Inc. ("Cavalier"), a company that served as a licensed mortgage broker in North Carolina. (ECF No. 109.17, at pp. 16, 18.) Cavalier subsequently became a mortgage lender at some point in the early 2000s. (*Id.* at p. 18.) Cavalier operated primarily in the mortgage refinancing business. (ECF No. 67.2, at ¶ 5.)

3. By way of background, mortgage *brokers* licensed in North Carolina must maintain a minimum capital reserve of $25,000. In order for a company to obtain licensure as a mortgage *lender*, however, the minimum capital reserve is $1,000,000.

4. At some point in 2014, Norment and Miklosko developed plans to combine Cavalier's business with those of a separate company, Advantage Lending, LLC ("Advantage"), that was owned by Rabon. At the time, Advantage operated as a mortgage broker. (ECF No. 109.15, at p. 37; ECF No. 67.2, at ¶ 7.) A merger between Cavalier and Advantage was proposed, which would allow Cavalier "the opportunity to enter the purchase mortgage business, which was more stable than the mortgage refinance business." (ECF No. 67.2, at ¶ 7.) Norment also testified that it would

benefit Cavalier to have access to brokers that were affiliated with Advantage. (ECF No. 61.7, at ¶ 9.) Furthermore, the proposed merger would also benefit Advantage by virtue of Cavalier transferring its mortgage lender license to Advantage. At the time, Rabon was the sole member and manager of Advantage, which was governed by an Operating Agreement that included a description of the process by which new members could be admitted to the company and by which the Operating Agreement could be amended. (ECF No. 23.2, at p. 26, 50.)

5.    An attorney, Sid Aldridge, prepared two documents in connection with the proposed transaction between Cavalier and Advantage that are pertinent to the present Motion: (a) an Agreement for Subscription for Membership Interest in Advantage LLC ("Subscription Agreement); and (b) an Agreement to Admission of Members and Amendment to Operating Agreement of Advantage LLC ("Admission Agreement") (collectively, the "Agreements"). (ECF No. 20.1, at pp. 1, 4.)

6.    The Subscription Agreement provided that Norment and Miklosko would each contribute $1,000,000 in cash and property to Advantage in exchange for obtaining a one-third membership interest in the company. (ECF No. 20.1, at p. 1.) Notably, however, the Subscription Agreement contained a provision stating in pertinent part as follows:

> If the NCCOB [North Carolina Commissioner of Banks] has not approved this transaction by July 31, 2014, the admission of Subscribers[1] shall be null and void, and the Company shall return all consideration paid by Subscribers to each of them, and Subscribers shall return

---

[1] The term "Subscribers" in the Subscription Agreement referred to Norment and Miklosko. (ECF No. 20.1, at p. 1.)

to the Company any distributions received by them from the Company with respect to their membership interest.

(*Id.* at p. 2.)

7.      The Admission Agreement purported to amend Advantage's Operating Agreement to admit Norment and Miklosko as additional members of Advantage per the terms of the Subscription Agreement.  (*Id.* at p. 4.)  However, the Admission Agreement also stated the following:

> Pursuant to the terms of the Subscription Agreement, the admission of Purchasers[2] shall be null and void if the [NCCOB] has not approved the admission of Purchasers by June 31, 2014.[3] In such case, all consideration paid by Purchasers shall be returned to them, and Purchasers shall return to the Company any distributions paid to them by the Company with respect to their Membership Interests.

(*Id.* at p. 5.)

8.      The Admission Agreement further stated that "[e]xcept as expressly set forth in this Amendment, the Operating Agreement is hereby ratified and reaffirmed."  (*Id.* at p. 4.)  It also provided that "Purchasers hereby consent to and agree to be bound by the terms of the Operating Agreement of the Company, as amended by this Amendment."  (*Id.* at pp. 3, 5.)  Norment, Miklosko, and Rabon each signed the Admission Agreement.  (*Id.* at p. 5.)

9.      The existing Operating Agreement for Advantage provided that

---

[2] Similarly, the term "Purchasers" in the Admission Agreement referred to Norment and Miklosko.  (ECF No. 20.1, at p. 4.)

[3] The parties agree that the operative date for the provisions in both documents requiring approval by the NCCOB was intended to be *July* 31, 2014.  (ECF No. 109.20, at pp. 56–57.)

A Capital Account shall be established for each Member and shall be credited with each Member's initial and any additional Capital Contributions. All contributions of property to the Company by a Member shall be valued and credited to the Member's Capital Account at such property's Gross Asset Value on the date of contribution.

(ECF No. 167.1, at p. 13.)

10. In order to comply with their monetary obligations as set out in the Subscription Agreement, Norment and Miklosko decided to distribute real estate and cash from Cavalier to themselves, after which they would transfer the property to Advantage and that this transfer would satisfy their required capital contributions. (ECF No. 61.7, at ¶ 2.) In addition, Norment and Miklosko "agreed to continue operating Cavalier until Advantage . . . obtained necessary licenses and government approvals to take over the mortgage lending business of Cavalier." (ECF No. 61.7, at ¶ 3.) Norment testified that he and Miklosko were also in agreement that once Advantage gained the requisite licenses and approvals, Cavalier would be dissolved, at which time Cavalier's remaining assets would be distributed between Norment and Miklosko. (*Id*.)

11. Cavalier was eventually dissolved on 17 July 2015. (ECF No. 109.17, at p. 33.) Miklosko testified that after dissolution, Cavalier paid out wages to its employees who had moved over to Advantage. (*Id*. at p. 109–11.) Upon Cavalier's dissolution, its loan officers began originating loans for Advantage. (*Id*. at pp. 113–14.) Miklosko further stated that upon the dissolution of Cavalier, he gave Norment "bank statements of the close-out of Cavalier, [and] gave him the final checks that came out of Cavalier for whatever balances were left when the accounts were closed, which were small dollar amounts." (ECF No. 109.18 at pp. 218–19.) Norment

maintains, however, that "additional capital was transferred into Advantage Lending, LLC that should have been distributed to [Norment] and . . . Miklosko[.]" (ECF No. 162.2, at ¶ 2.)

12. No action was taken by the NCCOB by 31 July 2014. However, the NCCOB issued Advantage a license to conduct mortgage lending on 27 October 2014. (ECF No. 103.1; ECF No. 103.3.) This approval from the NCCOB was received prior to Cavalier's July 2015 dissolution. (ECF No. 67.1, at ¶ 9.)

13. In July of 2015, Advantage received HUD approval to originate FHA loans. (ECF No. 67.1, at ¶ 2.) As a result, Advantage was now able to originate such loans itself without having to rely any longer on Cavalier's prior approval, effectively resulting in the transfer of all of Cavalier's business to Advantage. (*Id*.)

14. Between 2014 and 2016, Norment continued his work for Advantage in generating mortgage-related business. (ECF No. 61.7, at ¶¶ 7, 14.) Norment testified, however, that he faced significant difficulties at Advantage, including lack of "access to . . . real estate agents, and especially brokers-in-charge"—access that Norment had expected to receive upon the initiation of the merger. (*Id*. at ¶ 6.) Norment stated that he had anticipated he would continue to play the large role he had occupied at Cavalier while also receiving the benefit of access to brokers through Rabon's connections. (*Id*. at ¶¶ 6–9.) Miklosko and Rabon, conversely, both testified that they were not aware of any representations to Norment that he would have access to any brokers-in-charge while at Advantage. (ECF No. 67.1, at ¶ 11; ECF No. 67.2, at ¶ 17.) Norment also stated that his role at Advantage was limited to loan

refinancing and that he was excluded from other types of business for the company. (ECF No. 61.7, at ¶ 9.)

15. Advantage stopped paying Norment in December 2015. (*Id*. at ¶ 11.) Miklosko testified that Norment "totally stopped coming to work" and that no discussions regarding Norment's salary occurred thereafter. (ECF No. 109.18, at pp. 200–01.)

16. The parties disagree on a number of issues relating to the provision in the Agreements requiring NCCOB approval by 31 July 2014 and its effect on Norment's decision to cease his work for Advantage. Norment testified that he did not learn until 2016 that Advantage had not received the specified NCCOB approval before 31 July 2014. (ECF No. 61.7, at ¶ 7.) He also stated that Miklosko and Aldridge were in charge of gaining FHA/HUD approval to originate FHA loans and that it took them far longer than necessary to gain such approval. (*Id*. at ¶ 5.) Miklosko, conversely, testified that Norment was fully aware at all relevant times of the status of the NCCOB and FHA/HUD approvals and that, in fact, Norment was the person at Advantage who was in charge of obtaining FHA/HUD lending approval. (ECF No. 94.1, at ¶¶ 3–11.) In any event, it is undisputed that Norment resigned from Advantage on 31 March 2016 via a letter from his attorney and that he demanded—unsuccessfully—that Advantage return to him his prior $1,000,000 capital contribution to Advantage. (ECF No. 61.7, at ¶ 14.)

17. In addition to their joint involvement with Cavalier and Advantage, Norment and Miklosko are also co-owners of a separate business called Steel

Holdings, LLC ("Steel") that involves the leasing, management, and collection of rent regarding an office condominium unit in Wake County. (ECF No. 61.7, at ¶ 13; ECF No. 67.2, at ¶ 25.) According to Norment, he and Miklosko have been deadlocked for a number of years regarding the management of Steel and that Miklosko has improperly made unilateral decisions on Steel's behalf without consulting Norment since 2015. (ECF No. 61.7, at ¶ 13.) Miklosko, in response, asserts that his management of Steel has occurred with Norment's consent. (ECF No. 67.2, at ¶ 25.)

18. On 29 June 2017, Norment filed an initial lawsuit (the "Prior Action") in Wake County Superior Court containing a number of individual claims against Rabon and Miklosko as well as derivative claims on behalf of Cavalier, Steel, and Advantage. (ECF No. 109.3.) On 16 July 2018, the Honorable W. Osmond Smith, III granted summary judgment in favor of the defendants on each of Norment's derivative claims. *Norment v. Rabon*, 17CVS8037 (N.C. Super. Ct. July 16, 2018). On 6 December 2018, Norment voluntarily dismissed the Prior Action without prejudice.

19. On 27 May 2019, Rabon and Miklosko initiated the present action by filing a Complaint in Wake County Superior Court against Norment. (ECF No. 3.) In their complaint, Rabon and Miklosko asserted claims for malicious prosecution and abuse of process stemming from Norment's assertion of his claims in the Prior Action. (ECF No. 3, at ¶¶ 31–40.)

20. This case was designated a mandatory complex business case on 8 July 2019 and assigned to the Honorable Gregory P. McGuire. (ECF Nos. 1, 2.)

21. After previously filing two responsive pleadings, Norment filed a Second Amended Answer and Counterclaims on 10 October 2019. (ECF No. 20.) Rabon, Miklosko, Advantage, Cavalier, and Steel were all named as defendants to Norment's counterclaims. (*Id.*) Norment also named as an additional defendant an entity he referred to as "Advantage Lending, a common law partnership."[4] (*Id.*)

22. Norment's counterclaims included the following claims: (1) conversion/trespass to chattels against Rabon, Miklosko, and Advantage; (2) breach of contract against Rabon, Miklosko and Advantage based on their failure to return to Norment his $1,000,000 capital contribution; (3) to quiet title and "for [l]egal and [e]quitable [r]elief as to [r]eal [e]state" against Rabon, Miklosko, and Advantage; (4) breach of contract against Advantage for unpaid wages; (5) quantum meruit against Advantage; (6) breach of fiduciary duty against Miklosko and Cavalier; (7) breach of fiduciary duty "for constructive trustees and of partners" against Rabon and Miklosko; (8) breach of fiduciary duty "in Management of Partnership and Advantage" against Rabon and Miklosko; (9) constructive fraud against Rabon and Miklosko; (10) fraud/misrepresentation against Rabon, Miklosko, Advantage, and Partnership; (11) accounting regarding Cavalier, Steel, Advantage, and Partnership; (12) winding up of Cavalier and the appointment of a receiver; (13) dissolution of Steel

---

[4] In his counterclaims, Norment takes the position that neither he nor Miklosko ever actually became members of Advantage due to the fact that no NCCOB approval was obtained by 31 July 2014. Therefore, he asserts, a de facto common law partnership (Advantage Lending) was created by operation of law. Miklosko and Rabon dispute that any such partnership has ever existed and maintain that both Norment and Miklosko did, in fact, become members of Advantage despite the absence of approval by NCCOB by the prescribed deadline. For clarity, the Court refers to the alleged Advantage Lending partnership throughout this opinion simply as the "Partnership."

and the appointment of a receiver; (14) dissolution of the Partnership and the appointment of a receiver; and (15) dissolution of Advantage and the appointment of a receiver. (ECF No. 20, at ¶¶ 107–214.)

23. Notably, none of Norment's counterclaims were asserted as derivative claims. Instead, they were all brought as individual claims. (*Id*.)

24. On 4 November 2019, Norment filed a Motion to Strike Answers of Cavalier Mortgage Group, Inc. and Steel Holdings, LLC and to Disqualify Counsel. (ECF No. 24.) Norment sought to disqualify Richard Farrell, who had previously been serving as the attorney of record for all Defendants, from serving as counsel for Cavalier and Steel and to have those entities' answers stricken from the record. (*Id*.) On 23 March 2020, the Court granted Norment's motion and in its order (1) disqualified Farrell from serving as counsel for Cavalier and Steel; and (2) ordered that Cavalier's and Steel's names be stricken from pleadings that had been purportedly filed by Farrell as counsel for Cavalier and Steel. (ECF No. 45, at pp. 8–9.)

25. Rabon and Miklosko filed a Notice of Voluntary Dismissal pursuant to N.C. R. Civ. P. 41(a) on 5 December 2019 in which they dismissed, without prejudice, all of the claims they asserted against Norment in the Complaint. (ECF No. 33.)[5]

26. On 15 June 2020, Norment filed a Motion for Partial Summary Judgment against Advantage and the Partnership. (ECF No. 60.) In this motion,

---

[5] As a result of the voluntary dismissal, the Court amended the caption of this case to identify Norment as "Plaintiff" and Rabon, Miklosko, Advantage, Cavalier, Steel, and the Partnership as "Defendants." (ECF No. 75.)

Norment sought summary judgment in his favor on his breach of contract claim regarding the Agreements as well as on his claim for dissolution and receivership of the Partnership and his claims for an accounting as to Advantage and the Partnership. (*Id.* at pp. 3–4.)

27. On 5 January 2021, the Court issued an Order and Opinion denying Norment's motion, ruling that factual disputes remained on the issues of whether Norment is entitled to a return of his $1,000,000 investment in Advantage, whether Norment actually became a member of Advantage, whether his work with Rabon, Norment, and Advantage created a common-law partnership, and whether Norment waived the requirement that NCCOB approval be obtained by 31 July 2014. (ECF No. 123, at pp. 20–22.)[6] The Court also denied Norment's motion for summary judgment on his dissolution, accounting, and receivership claims. (*Id.* at pp. 21–22.)

28. On 1 July 2021, this matter was re-assigned to the undersigned. (ECF No. 156.)

29. Defendants filed a Motion for Summary Judgment on 27 September 2021 as to each of the claims asserted by Norment. (ECF No. 160.)

30. This matter came before the Court for a hearing on 28 January 2022. The Motion is now ripe for decision.

---

[6] In light of the existing factual dispute over whether Norment ever legally became a member of Advantage given the untimely NCCOB approval, throughout this opinion the Court must analyze certain claims brought by Norment in the alternative—that is, the Court must address both of the competing scenarios that (1) Norment was, in fact, a member of Advantage; and (2) Norment was never a member of Advantage and instead was in a de facto partnership with Rabon and Miklosko.

## LEGAL STANDARD

31.     It is well established that "[s]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *Morrell v. Hardin Creek, Inc.*, 371 N.C. 672, 680 (2018) (quoting N.C. R. Civ. P. 56(e)). "[A] genuine issue is one which can be maintained by substantial evidence." *Kessing v. Nat'l Mortg. Corp.*, 278 N.C. 523, 534 (1971). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and means more than a scintilla or a permissible inference." *Daughtridge v. Tanager Land, LLC*, 373 N.C. 182, 187 (2019) (citation and internal quotation marks omitted).

32.     On a motion for summary judgment, "[t]he evidence must be considered 'in a light most favorable to the non-moving party.'" *McCutchen v. McCutchen*, 360 N.C. 280, 286 (2006) (quoting *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470 (2004)). "[T]he party moving for summary judgment ultimately has the burden of establishing the lack of any triable issue of fact." *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491 (1985).

33.     The party moving for summary judgment may satisfy its burden by proving that "an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of [the] claim[.]" *Dobson v. Harris*, 352 N.C. 77, 83 (2000) (citations

omitted). "If the moving party satisfies its burden of proof, then the burden shifts to the non-moving party to 'set forth *specific facts* showing that there is a genuine issue for trial.'" *Lowe v. Bradford*, 305 N.C. 366, 369–70 (1982) (quoting N.C. R. Civ. P. 56(e)). If the nonmoving party does not satisfy its burden, then "summary judgment, if appropriate, shall be entered against [the nonmovant]." *United Cmty. Bank (Ga.) v. Wolfe*, 369 N.C. 555, 558 (2017) (quoting N.C. R. Civ. P. 56(e)).

## ANALYSIS

### A. Standing

34. A significant portion of Defendants' arguments in connection with their Motion are devoted to their contention that Norment lacks standing to assert his claims against them. Because a plaintiff's standing is required in order for a court to possess subject matter jurisdiction over an action, *see Street v. Smart Corp.*, 157 N.C. App. 303, 305 (2003) (cleaned up) ("Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction."), the Court will address this issue first.

35. Defendants challenge Norment's standing to bring the bulk of the claims he has asserted in this action on the ground that these claims may only be asserted *derivatively* rather than *individually*. Defendants specifically object to Norment's standing to assert claims in his individual capacity for conversion, trespass to chattels, action to quiet title, breach of fiduciary duty, fraud, constructive fraud, accounting, and winding up/dissolution.

36. Norment does not dispute the fact that none of his claims have been brought derivatively but rather argues that he possesses standing to assert all of them individually.

37. It is well established that "[i]f a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim." *Estate of Apple v. Commer. Courier Express, Inc.*, 168 N.C. App. 175, 177 (2005) (citations omitted), *disc. rev. denied*, 359 N.C. 631 (2005). Moreover, "[a]s the party invoking jurisdiction, plaintiff[] ha[s] the burden of establishing standing." *Marriott v. Chatham Cty.*, 187 N.C. App. 491, 494 (2007) (cleaned up).

38. North Carolina courts have made clear "that LLC members generally cannot maintain an individual claim against another member for harms suffered by the LLC." *Sivadhanam v. 7 Hills Learning, LLC*, 2021 NCBC LEXIS 74, at *13 (N.C. Super. Ct. Sept. 8, 2021) (cleaned up). "[H]owever, an LLC member may maintain an individual action against a fellow LLC member for a harm that 'directly affects' the member if he can show 'that [(1)] the wrongdoer owed him a special duty or that [(2)] the injury suffered by the member is separate and distinct from the injury sustained by the other members or the LLC itself." *Id*. (cleaned up) (quoting *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 659 (1997)). This rule applies not only in the context of claims involving an LLC but also to claims involving corporations. *See Barger*, 346 N.C. at 658 (citation omitted) ("[A] shareholder may maintain an individual action against a third party for an injury that directly affects the shareholder, even if the corporation also has a cause of action arising from the same

wrong, if the shareholder can show that the wrongdoer owed him a special duty or that the injury suffered by the shareholder is separate and distinct from the injury sustained by the other shareholders or the corporation itself.").

39. As an initial matter, Norment's claims for conversion, trespass to chattels, and action to quiet title all hinge on the validity of Norment's breach of contract claim. In short, Norment argues that Defendants breached the Agreements and have subsequently refused to return the capital contribution of $1,000,000 that was made by him in connection with his disputed admission as a member of Advantage in 2014.

40. As noted above, the Agreements contained a "clawback" provision that provided for the return of Norment's contribution in the event the condition regarding timely approval by the NCCOB was not satisfied. As a result, Norment's claims are unique to him and do not trigger the *Barger* test since these claims do not involve injury to Advantage and instead allege injury only to Norment himself. In short, Norment is seeking the return of his own property and, as a result, he possesses standing to assert not only his claim for breach of the Agreements but also his accompanying claims for conversion, trespass to chattels, and action to quiet title that depend on his contract claim.

41. The Court next must consider whether standing exists for Norment's various breach of fiduciary duty claims.

42. The Court concludes that Norment possesses standing to bring a breach of fiduciary duty claim against Rabon and Miklosko in connection with the

Partnership because "partners in a general partnership owe one another fiduciary duties." *See Crescent Foods, Inc. v. Evanson Pharms., Inc.*, 2016 NCBC LEXIS 76, at *17 (N.C. Super. Ct. Oct. 5, 2016). Therefore, Norment is not required to satisfy the *Barger* test in order to demonstrate standing as to this claim.[7]

43. The Court reaches a different result, however, with regard to Norment's claims for breach of fiduciary duty regarding Cavalier and Advantage.

44. In support of his breach of fiduciary duty claim regarding Cavalier, Norment testified that at some point following Cavalier's dissolution, Miklosko transferred Cavalier funds to Advantage. Norment contends that these funds should have been transferred to Miklosko and Norment as part of the normal winding-up process of Cavalier. (ECF No. 162.2, at ¶ 2.) As a result, Norment asserts that he possesses standing to bring his breach of fiduciary duty claim based on his status as a creditor of Cavalier. Norment's characterization of himself as a "creditor" is therefore based on his assertion that he was owed money following the company's dissolution due to his status as a shareholder of Cavalier.

45. Defendants argue that any injury Norment may have incurred stemming from Miklosko's alleged transfer of Cavalier assets to Advantage following the dissolution of Cavalier was shared by the company itself such that Norment

---

[7] The Court notes that Defendants have not briefed the specific issue of whether—assuming a common law partnership was, in fact, created—they are entitled to summary judgment on standing grounds as to Norment's breach of fiduciary duty claim regarding the Partnership. Instead, Defendants simply take the position that no partnership was ever created. Defendants have not made any argument suggesting that a partner in a general partnership must file a derivative claim (as opposed to an individual claim) against a co-partner to recover for injuries sustained by the injured partner where the partnership itself incurs similar injury.

cannot satisfy *Barger's* special injury exception. In response, Norment contends that he instead meets the *special duty* exception under *Barger* by virtue of his status as a creditor of the company upon its dissolution.

46. Our Supreme Court has made clear that creditors, like shareholders, "generally may not bring individual actions to recover what they consider their share of the damages suffered by the corporation" unless they can satisfy one of the *Barger* exceptions. *Green v. Freeman*, 367 N.C. 136, 142 (2013) (cleaned up). Accordingly, even assuming *arguendo* that under these circumstances Norment can properly be characterized as a creditor of Cavalier, he must still show a special duty or special injury under *Barger*.

47. In *Green*, however, the Supreme Court explained that

> [t]o recover under the special duty exception, there must be a special duty "that defendant[ ] owed . . . to plaintiffs that was personal to plaintiffs as [creditors] and was separate and distinct from the duty defendant[ ] owed the corporation." *Barger*, 346 N.C. at 661. When considering claims by shareholders, we have recognized the creation of a special duty "when the wrongful actions of a party induced an individual to become a shareholder; . . . when the party performed individualized services directly for the shareholder; and when a party undertook to advise shareholders independently of the corporation." *Id.* at 659 (citations omitted). "This list is illustrative; it is not an exclusive list of all factual situations in which a special duty may be found." *Id.* "We apply the same rules for establishing a special duty when plaintiffs are [creditors] as we apply when plaintiffs are shareholders." 346 N.C. at 661.

*Green*, 367 N.C. at 143.

48. The Court concludes that Norment has failed to offer any persuasive argument as to how he has satisfied this test. Therefore, Norment lacks standing to

assert a breach of fiduciary duty claim against Miklosko as to Cavalier, and the Court GRANTS Defendants' Motion for Summary Judgment on this issue.

49. The Court likewise holds that Norment lacks standing to assert a claim for breach of fiduciary duty against Rabon and Miklosko regarding their alleged wrongful acts in connection with Advantage. Defendants correctly argue under *Barger* that Norment cannot show a special injury because any financial harm to the company stemming from the alleged tortious acts of Rabon and Miklosko that resulted in a diminution in the value of Norment's ownership interest in Advantage is the classic example of a claim that must be brought derivatively. *See 1 Robinson on North Carolina Corporation Law* § 17.02 (2021) ("The North Carolina courts have expressly rejected the argument that a shareholder has an individual right to recover directly for any loss in the value of his shares caused by a wrong committed against the corporation.").

50. For this reason, Norment lacks standing to bring this claim unless he can satisfy the special duty exception. He contends that he has done so in light of this Court's recognition that a majority member of an LLC can owe a fiduciary duty to a minority member. *Richardson v. Utili-Serve, LLC*, 2020 NCBC LEXIS 135, at **11 (N.C. Super Ct. Nov. 17, 2020) (cleaned up) ("The usual rule is that members of an LLC do not owe fiduciary duties to one another. An exception is that the holder of a majority interest who exercises control over the LLC owes a fiduciary duty to the minority interest members.")

51.     The fatal defect in this argument here is that neither Rabon nor Miklosko were majority members of Advantage.   Instead, Rabon, Miklosko and Norment each owned a one-third interest in the company.

52.     In recognition of this fact, Norment seeks to rely upon caselaw holding that when two or more shareholders of a close corporation collectively exercise a majority interest at the expense of a separate minority shareholder, a fiduciary duty exists.   However, this Court has recently cautioned against applying that rule in the LLC context.

> Some recent cases have stated that "a holder of a majority interest who exercises control over the LLC owes a fiduciary duty to minority interest members." *Fiske v. Kieffer*, 2016 NCBC LEXIS 22, at *9 (N.C. Super. Ct. Mar. 9, 2016).   "The scope of this exception, borrowed from precedents governing corporations, remains unsettled," and "[t]his Court has cautioned against a broad application because of the fundamental differences between LLCs and corporations." *Strategic Mgmt. Decisions*, 2017 NCBC LEXIS 69, at *11.   In the corporate context, for example, courts have held that a controlling shareholder may include "a group of shareholders with an aggregated majority interest acting in concert." *Brewster v. Powell Bail Bonding, Inc.*, 2018 NCBC LEXIS 76, at *10 (N.C. Super. Ct. July 26, 2018).   But this Court has routinely refused to extend these precedents to LLCs because minority members have much greater ability to negotiate for protections in the operating agreement. *See, e.g., HCW Ret. & Fin. Servs., LLC v. HCW Employee Benefit Servs., LLC*, 2018 NCBC LEXIS 73, at *47 n.102 (N.C. Super. Ct. July 14, 2015); *Fiske*, 2016 NCBC LEXIS 22, at *10; *Blythe v. Bell*, 2013 NCBC LEXIS 17 at *13–14 (N.C. Super. Ct. Apr. 8, 2013).

*Bennett v. Bennett*, 2019 NCBC LEXIS 19, at *19–20 (N.C. Super. Ct. Mar. 15, 2019).

53.     Based on this same reasoning, the Court declines to hold that Rabon and Miklosko owed Norment a fiduciary duty.   Therefore, Norment's claim for breach of

fiduciary duty with regard to Advantage could only have been properly asserted as a derivative claim.

54. With regard to Norment's claim for constructive fraud, our Supreme Court has explained that the elements of constructive fraud significantly overlap with the elements of breach of fiduciary duty. *See Chisum v. Campagna*, 376 N.C. 680, 706–07 (2021) (cleaned up). "[A] cause of action for constructive fraud [requires] (1) a relationship of trust and confidence, (2) that the defendant took advantage of that position of trust in order to benefit himself, and (3) that plaintiff was, as a result, injured." *White v. Consol. Planning Inc.*, 166 N.C. App. 283, 294 (2004) (citation omitted). "The primary difference between pleading a claim for constructive fraud and one for breach of fiduciary duty is the constructive fraud requirement that the defendant benefit himself." *Id.*

55. Therefore, for the same reasons that Norment lacks standing to assert individually his breach of fiduciary duty claims relating to Cavalier and Advantage, he is likewise without standing to assert his individual constructive fraud claims premised on Defendants' same alleged conduct. However, standing does exist to the extent that Norment's constructive fraud claim is predicated on his alternative allegations regarding the alleged breach of the fiduciary duty owed to him by Miklosko and Rabon in connection with the Partnership.

56. Standing also exists for Norment's claim for fraud/misrepresentation. This claim is based on Norment's allegations that Rabon, Miklosko, Advantage, and the Partnership intentionally failed to disclose or misrepresented relevant and

material facts to Norment on various topics, including the failure to receive timely approval from the NCCOB, the financial status of the companies, and the access he would have to real estate brokers after becoming a member of Advantage. These claims allege injury to Norment alone rather than injuries that he shared with the respective companies. Accordingly, the *Barger* test is not implicated.

57.     Finally, Defendants challenge Norment's standing to seek dissolution, accounting, winding up, and receivership with regard to Cavalier, Advantage, Steel, and the Partnership. However, Norment possesses a statutory right to assert these claims, and Defendants have not provided any legal support for the proposition that such claims must be brought derivatively. *See, e.g.*, N.C.G.S. § 55-14-32; § 1-507.24; § 57D-6-02; § 57D-6-04; § 59-62; § 59-67 (2021).

58.     For these reasons, Defendants' Motion for Summary Judgment based on lack of standing is GRANTED as to Norment's claims for breach of fiduciary duty and constructive fraud regarding Cavalier and Advantage. As to all other claims asserted by Norment, Defendants' Motion based on lack of standing is DENIED.

**B. Statute of Limitations**

59.     Defendants also contend as a threshold matter that a number of the claims asserted by Norment are time-barred because they relate to acts allegedly committed outside the applicable limitation periods governing those claims.

60.     In response, Norment argues that all of his claims in this lawsuit were either (1) brought within their applicable limitation periods; or (2) the claims at issue were advanced by Norment in his complaint in the Prior Action and pursuant to

North Carolina Rule of Civil Procedure 41, the statutes of limitations were therefore tolled as to those claims.

61.     Under Rule 41, a plaintiff may dismiss his action, without prejudice, at any time before resting his case. "If an action commenced within the time prescribed therefor, or any claim therein, is dismissed without prejudice under this subsection, a new action based on the same claim may be commenced within one year after such dismissal. . . ." N.C. R. Civ. P. 41(a)(1). This provision effectively extends the claim's statute of limitations by one year after a plaintiff takes a voluntary dismissal. *Whitehurst v. Virginia Dare Transp. Co.,* 19 N.C. App. 352, 356 (1973). However, if a plaintiff chooses to refile his action after taking a Rule 41 dismissal, the above-referenced rule only applies if the new action is based upon the same claims as the previous action. *Brannock v. Brannock*, 135 N.C. App. 635, 639–40 (1999); *see also Cherokee Ins. Co. v. R/I, Inc.*, 97 N.C. App. 295, 297 (1990) (cleaned up) (noting that both claims must be "substantially the same, involving the same parties, the same cause of action, and the same right"). If the two actions are "fundamentally different," then the new action is not considered a continuation of the first action and the one-year extension provision of Rule 41 cannot be invoked. *Stanford v. Owens*, 76 N.C. App. 284, 289 (1985).

62.     Defendants contend that Norment's claims in the present action—at least in part—contain "new" theories of recovery that were not asserted by him in the Prior Action.

63. The Court has engaged in a thorough comparison of Norment's complaint in the Prior Action with the claims contained in his Second Amended Answer and Counterclaims. The Court concludes that all of the claims asserted in the present action have either been brought within the applicable limitations period governing such claims or are "substantially the same" as claims asserted in the Prior Action (rather than constituting claims arising under new theories of liability). Accordingly, the Court rejects Defendants' argument based on the statute of limitations.

## C. Norment's Contract-Based Claims

64. Defendants argue that the Court should grant summary judgment in their favor on Norment's conversion, trespass to chattels, breach of contract, and action to quiet title claims because all of these causes of action are based on the flawed premise that the lack of timely approval from the NCCOB constituted a breach of the Agreements, thereby entitling Norment to a return of his $1,000,000 capital contribution to Advantage. Defendants contend that (1) no legal requirement existed under North Carolina law that NCCOB approval be obtained in order for Norment and Miklosko to become members of Advantage; and (2) alternatively, even if such approval was a necessary condition under the Agreements, Norment waived (or is estopped from contesting) any breach arising out of that unfulfilled condition by continuing to act as a member of Advantage despite his awareness that timely NCCOB approval had not been obtained. Norment, conversely, asserts that such approval was, in fact, required pursuant to N.C.G.S. § 53-244.100(e) and its

accompanying administrative regulations and denies that he waived this contractual condition or is otherwise estopped from relying upon its breach. The Court concludes that the entry of summary judgment on this ground would be improper.

65. Although the parties spend substantial portions of their briefs addressing the legal issue of whether NCCOB approval was actually required, the Court need not resolve this question because it has already held that a genuine issue of material fact exists regarding Norment's breach of contract claim. In the Court's 5 January 2021 Order and Opinion, Judge McGuire expressly addressed the parties' arguments as to the existence of material factual disputes on the issues of whether the absence of NCCOB approval by 31 July 2014 constituted a breach of the Agreements and whether Norment had waived any such requirement by his subsequent conduct. In the Order and Opinion, Judge McGuire stated the following:

> The parties do not dispute that: (a) the Agreements are valid contracts executed between Norment, Miklosko, Rabon, and Advantage LLC; (b) the Admission Agreement provided that it would be "null and void" if the NCCOB "has not approved the admission of [Norment and Miklosko] by July 31, 2014" and the Subscription Agreement provided that it "shall be null and void" if NCCOB did not approve the "transaction by July 31, 2014"; (c) the NCCOB did not approve the Transaction until October 27, 2014; (d) the Agreements provided that if approval from the NCCOB was not obtained by July 31, 2014, Advantage LLC "shall" return the contributions paid by Norment and Miklosko; and, (e) Advantage LLC did not return Norment's contribution.

> While these undisputed facts would establish a breach of the Agreements, Advantage LLC argues that Norment waived his rights by continuing to work with Rabon and Miklosko, and on behalf of Advantage LLC, toward completing the Transaction after July 31, 2014, and up until March 2016.
> . . .

The Court has thoroughly reviewed the evidence in the record and finds that substantial issues of genuine fact exist as to whether Norment waived the requirement that NCCOB approval be obtained by July 31, 2014, including: whether Norment knew or should have known that the NCCOB had not approved the Transaction by July 31, 2014; whether his conduct "naturally and justly" led Advantage LLC to believe that Norment was waiving the approval deadline, *Guerry*, 234 N.C. at 648, 68 S.E.2d at 275; and whether Norment intended to waive the approval deadline. The facts and inferences arising from those facts should be determined by a jury. *Brittain*, 168 N.C. at 276, 84 S.E. at 282. Therefore, to the extent it seeks summary judgment as to the claim for breach of contract, the Motion for Summary Judgment should be DENIED.

Since the Court concludes that summary judgment on Norment's claim for breach of the Agreements must be denied, it also concludes that summary judgment cannot be granted on the current record regarding whether Norment is entitled to a return of his investment in Advantage LLC, whether Norment is a member of Advantage LLC, or whether his work with Rabon, Norment, and Advantage LLC created a common-law partnership.

(ECF No. 123, at pp. 18–21.)

66.     As noted above, Norment's conversion, trespass to chattels, breach of contract, and action to quiet title claims are all based on the notion that Norment is entitled to a return of his capital investment in Advantage pursuant to the clawback provisions in the Agreements.  Given the need for resolution by a jury on this issue, Defendants' Motion for Summary Judgment as to these claims is DENIED.

**D. Business Judgment Rule**

67.     Finally, Defendants argue that summary judgment in their favor is proper because the application of the business judgment rule insulates Rabon and Miklosko from any liability stemming from their conduct toward Norment.  The Court disagrees.

68.     In North Carolina, the business judgment rule

> creates, first, an evidentiary presumption that in making a decision, the managers acted on an informed basis and in good faith in the honest belief that their decision was in the best interest of the LLC, and second, absent rebuttal of the initial presumption, the rule creates a powerful substantive presumption that a decision by a loyal and informed manager will not be overturned by a court unless it cannot be attributed to any rational business purpose.

*Emrich Enters. v. Hornwood, Inc.*, 2022 NCBC LEXIS 19, at **45 (N.C. Super Ct. Feb. 15, 2022) (cleaned up).

69.     This Court has recognized that "[b]usiness decisions involve judgments by the board as to whether to enter into a course of conduct, generally one that creates new rights or obligations on behalf of the company and involves weighing the risks and rewards of future conduct, which is the type of decision-making process the business judgment rule is designed to protect." *Id.* at **46 (cleaned up).  The business judgment rule applies in both the context of a corporation and an LLC.  *Id.* at **45; *Lee v. McDowell*, 2022 NCBC LEXIS 51, at **19 (N.C. Super. Ct. May 26, 2022).

70.     However, the business judgment rule has significant limits.  Notably, it does not apply in cases involving bad faith, conflict of interest, or disloyalty.  *See Seraph Garrison, LLC v. Garrison,* 247 N.C. App. 115, 122–23 (2016).  In addition, it is not a valid defense to a breach of contract claim.  *See Anderson v. Nottingham Vill. Homeowners' Assn. Inc.*, 37 A.D.3d 1195, 1197 (N.Y. App. 2007) (cleaned up) ("[W]hile it may be good business judgment to walk away from a contract, this is no defense to a breach of contract claim.")

71.     In the present case, Norment's claims—supported at the summary judgment stage by evidence, including his own affidavit testimony—are replete with assertions that Rabon and Miklosko intentionally refused to return assets that belonged to him, engaged in self-dealing by improperly making substantial payments from company assets to themselves, misrepresented key information about the attempted merger between Cavalier and Advantage, and refused to provide material information about the financial status of the companies to Norment.

72.     Although Defendants have offered testimony that differs markedly from Norment's assertions, the existence of clearly material factual disputes renders summary judgment inappropriate on the basis of the business judgment rule. If a jury finds Norment's evidence credible with regard to the series of events from which his claims arise, such conduct by Defendants falls well outside the sphere of legitimate business decisions that are protected by the rule.[8]

73.     For these reasons, the Court DENIES Defendants' Motion for Summary Judgment based on the business judgment rule.

---

[8] Defendants contend that the Court should not consider the affidavit testimony of Plaintiff's expert witness, Elizabeth Berry, because the opinions expressed in her affidavits go well beyond those she offered during her deposition. *See, e.g., Cousart v. Charlotte-Mecklenburg Hosp. Auth.*, 209 N.C. App. 299, 304 (2011) (cleaned up) ("[A] party opposing a motion for summary judgment cannot create a genuine issue of material fact by filing an affidavit contradicting his prior sworn testimony"). For the reasons set out more fully in the Court's Order on the parties' Motions to Strike—which is being filed contemporaneously herewith—the Court agrees that Berry's affidavits should be stricken. Accordingly, the Court has not considered Berry's affidavit testimony in its evaluation of Defendants' Motion for Summary Judgment.

**CONCLUSION**

**THEREFORE, IT IS ORDERED AS FOLLOWS**:

1. Defendants' Motion for Summary Judgment based on lack of standing as to Norment's claims for breach of fiduciary duty and constructive fraud regarding Cavalier and Advantage is GRANTED, and those claims are DISMISSED without prejudice.

2. Defendants' Motion for Summary Judgment is DENIED as to all other claims.

SO ORDERED, this the 7th day of July, 2022.

/s/ Mark A. Davis
Mark A. Davis
Special Superior Court Judge for
Complex Business Cases